## ˡ *Patterson against* Martz.

A contract between a vendor and vendee, to entitle itself to the assistance of a chancellor for specific execution, must have originated from a pure source; and if founded upon a breach of faith by the vendor, specific performance will not be decreed in favour of the vendee, although innocent of it: but he will be left to his action at law for damages.

Lapse of time, change of circumstances, and indifference on the part of the vendee of land, are circumstances to induce a chancellor to refuse a decree of specific performance.

ERROR to the common pleas of *Northumberland* county.

George Patterson against Benjamin Martz and others. Eject-ment for a tract of land. The case was this: Peter Dimmich being the owner of a tract of land, on or about the 1st of November 1829, entered into a parol contract with Samuel J. Packer, to sell it to him for 800 dollars, if Packer would comply on his part by the next December. On the 16th of November 1829, Dimmich entered into a written contract with George Patterson, the plaintiff, to sell and convey to him the land for 1400 dollars, 50 of which was paid on the execution of the agreement, the residue of one-half the pur-chase-money was to be paid on the first of January 1830, and the balance in two annual payments. This agreement was acknow-ledged and recorded on the 23d of April 1830. Before the 1st of January 1830, Patterson tendered the balance of the 700 dollars to Dimmich, and demanded a deed. But previously to that, on the 23d of November 1829, Packer went to Dimmich and insisted upon the execution of the parol contract between them. Dimmich replied that he was too late, that he had sold the land to George Patterson, by a written agreement, and received 50 dollars of the purchase-money. Packer still persisted in the execution of his contract and said that he would give as much as Patterson was to give, and eventually prevailed upon Dimmich to execute a conveyance to him for the land, for the consideration of 1420 dollars. Soon after this, Dimmich sent his son to George Patterson with the 50 dollars which he had received at the execution of the article: the messenger not finding him, paid the money to the wife of Burd Patterson, his brother, for him. Burd Patterson was a witness, and testified that he had received the money, and communicated the fact to his brother, who objected to his having received it. The witness stated, however, that his brother had borrowed the money from him, which he paid to Dimmich, and therefore he kept it. By the agreement between Dimmich and Patterson, it appeared that when

it was executed, Peter Wary was a tenant on the land, whose lease did not expire for two years, and subject to which he purchased. To August term 1831, Patterson brought an ejectment for the land against S. J. Packer, Peter Dimmich and Peter Wary, which was discontinued on the 28th of September 1832, upon the ground that the plaintiff supposed he would not be entitled to recover, because Peter Wary was a defendant, whose term had not expired when suit was brought.   The present ejectment was brought to November term 1837.   It also appeared that S. J. Packer had several partners in the purchase, and that he died without making a conveyance to them, and that after his death, in January and April 1837, con-. veyances were made by his administrator, by order of the orphans' court.   It was also in proof that the land had risen in value from 1829 to 1837, when this ejectment was brought.

The plaintiff requested the court to charge the jury upon the following points:

1. That the delay in instituting this ejectment is not a bar to the plaintiff's recovery under the circumstances detailed in evidence.

2. That the discontinuance of the ejectment of 1831 is no bar to plaintiff's recovering in this ejectment.   That it is accounted for by the article of agreement, and that it was premature and could not be sustained.   The discontinuance cannot operate injuriously to plaintiff.

3. That the testimony does not establish any parol contract for the land between Dimmich and Packer, vesting any interest in the land in Packer, or precluding Dimmich from selling to plaintiff; nor is plaintiff's right to recover in this ejectment affected by any parol contract, which the jury may infer from the testimony.

4. That any right Packer can claim to the land originates with his deed of the 23d of November 1829, subsequent to the articles with plaintiff.

5. That plaintiff's right is not affected by the alleged parol sale to Packer, of which plaintiff had no notice previous to or at the time of his purchase.

6. That the articles of agreement between George Patterson and Peter Dimmich having been recorded within six months from their execution, to wit, April 23d, 1830, were full notice, and all the notice that the law requires, to all persons claiming under S. J. Packer, by virtue of his deed of November 23d, 1829, especially as no steps were taken by any of those claiming an equity under Packer, to enforce their equity, till April term 1837.

7. That no laches can be imputed to plaintiff up to the time of defendant's becoming interested under Packer, nor can they, under the circumstances of making no improvements, or claim to have acquired a greater equity than Packer had at the time of his sale to them.

8. That plaintiff, by tendering his purchase-money, and showing

himself willing and able to fulfil his contract, cannot be affected by Dimmich's afterwards sending fifty dollars, and delivering them to the wife of Burd Patterson.

9. The tender to Peter Dimmich is sufficient. But the tender was not necessary, the money (1350 dollars) being brought into court.

Whereupon the court thus instructed the jury:

*Lewis,* president.—The plaintiff's points being severally read to the jury, the court remarked that some of them were right, some wrong, some partly right, and some partly wrong; and that the difficulty of answering each one separately, without danger of confusing the minds of the jury or misleading them, induced the court to answer them generally, and to say to the jury, for the purpose of this trial, " that the law was with the plaintiff on all the points, except so far as we are now about to give you instructions to the contrary."

The jury may take into consideration the discontinuance of the former ejectment by the plaintiff, on the 28th of September 1832, and the payment of the costs of the same; that no tender was ever made to Samuel J. Packer, or those claiming under him, notwithstanding the plaintiff had notice that the estate had been disposed of to Mr Packer; that the plaintiff delayed bringing a new suit until this action was brought, on the 19th of October 1837, when the writ was served, which may be considered the commencement of the action; and that this was after Packer had made sales of portions of the land to different persons, and representatives had been ordered, by decrees of the court, to carry those sales into execution by specific performance of the contracts; and after the land had risen very considerably in value, by reason of funds having been raised for the completion of the railroad, and at least one sale had been made at an advanced price, by one who claimed under Packer and had a decree of specific performance in his favour. The jury may, if they think proper, find, as a fact, that the plaintiff abandoned all further claim to the land; and, if so, the verdict should be for the defendants. The court also mentioned, with the other facts above stated, that this suit was not brought until after the plaintiff, by his own delay, was barred by his action for damages at law against the representatives of Peter Dimmich.

The jury may consider these circumstances in another point of view. If they believe that the discontinuance, and the delay until the land rose very considerably in value, was with an intention to speculate on the event, to perform the contract if the land rose in value, and not to perform it if it continued stationary or fell, then the plaintiff is not entitled, under the evidence, to insist on a specific performance of the contract. The jury will decide upon the intention of the plaintiff in this respect. The discontinuance of the former suit, on the 28th of September 1832, is sufficiently accounted for by the action having been brought before the two years of

[Patterson v. Martz.]

Wary's lease had expired. But those two years had expired on the day of the discontinuance, and a new action might have been brought the same day. The delay after that period is, therefore, not accounted for by the provisions of Peter Wary's lease, or the stipulations in the plaintiff's contract in relation to its continuance for two years.

Again: If the jury are satisfied of the existence of a verbal contract between Peter Dimmich and Samuel J. Packer, by which Dimmich agreed to sell the land to Packer, and Packer agreed to purchase it for the sum of 800 dollars; that this contract was entered into between the parties before the plaintiff's contract with Dimmich of the 16th of November 1829; and that, by the terms of the contract, Packer had until the month of December to fulfil the bargain, and within the time stipulated for the performance, to wit, on the 23d of November 1829, the money was paid and a deed executed in pursuance of the previous contract, and possession also delivered in accordance with it, and a lease executed to Peter Wary, the tenant in possession, on the 8th of December 1829, and possession continued under Packer, and others claiming under him, ever since, then the plaintiff is not entitled to recover.

Errors assigned:

1. In refusing a full and precise direction to the jury on the plaintiff's points, and for uncertainty and contradiction in the general charge in answer to said points.

2. In leaving the jury to discover, from the general charge, on what propositions submitted by the plaintiff, the law was with him and on what against him.

3. In charging the jury that they might consider the delay in instituting the ejectment, with the other circumstances referred to, as an abandonment, by the plaintiff, of his claim.

4. In charging that the discontinuance of the first ejectment by the plaintiff, might be considered by the jury as an act of abandonment; and afterwards instructing, that it was sufficiently accounted for by a clause in the plaintiff's contract with Dimmich, in regard to Wary's lease.

5. In refusing to instruct the jury directly and fully on the plaintiff's third, fourth and fifth points; or, if they are matter of instruction at all, the court erred in directing the jury that, if satisfied of the parol sale to· Packer, and that it was executed as stated, the plaintiff is not entitled to recover.

6. In refusing to instruct the jury fully and particularly on the plaintiff's sixth point.

7. In not explicitly and directly instructing the jury on the plaintiff's seventh point.

8. In refusing to notice the plaintiff's eighth point.

9. In charging, that the want of tender by the plaintiff to Packer, or those claiming under him, was a circumstance, with others, from which the jury might infer abandonment.

[Patterson v. Martz.]

*Hepburn,* for plaintiff in error, cited 3 *Penn. Rep.* 364; 14 *Serg. & Rawle* 125; 5 *Cranch* 506; 3 *Serg. & Rawle* 431; *Serg. Ven.* ch. 8, sect. 1; 4 *Vez.* 687; 1 *Serg. & Rawle* 119; 5 *Watts* 451; 16 *Serg. & Rawle* 269; 3 *Serg. & Rawle* 423; 1 *Yeates* 291; 2 *Yeates* 345.

*Donnel* and *Grenough,* for defendants in error, cited *Fond. Eq.* 163, 283; 1 *Johns. Ch.* 378; 5 *Watts* 451; 2 *Watts* 183; 1 *Johns. Ch.* 150; 2 *Watts* 459; 1 *Cowan* 713; 3 *Cowan* 519; 2 *Com. Dig.* 518; 1 *Binn.* 480; *Serg. Ven.* 172, 281.

The opinion of the Court was delivered by

GIBSON, C. J.—If, as the evidence seems to show, Dimmich had previously agreed to convey to Packer, at a day still to come, a chancellor would refuse to execute the plaintiff's intermediate purchase, for the reason that no assistance is ever given to one who claims by a contract which originated in a breach of faith. In Cooth *v.* Jackson, 6 *Ves.* 17, the agreement grew out of improper disclosures of the contents of depositions taken by commissioners; and Lord Eldon dismissed the bill, though the blame was not imputable to the plaintiff. On the same ground, he refused in Mortlock *v.* Buller, 10 *Ves.* 292, to execute a purchase from an agent of trustees at a price so reduced as to involve a breach of the trust. In these instances, he was actuated by considerations of public policy. For a similar reason, specific performance of a contract made with a man when he was intoxicated, was refused in Cragg *v.* Holme, cited in Cook *v.* Clayworth, 18 *Ves.* 14, though the plaintiff had neither contributed to make him drunk, nor taken advantage of his situation when he was so. In Campbell *v.* Spencer, 2 *Bin.* 133, this court went, perhaps, still further; and I by no means think it went too far. There was no proof that the defendant was even drunk; but the bargain, which was a very improvident one, was made at early dawn in a course of dram-drinking, at a tavern to which he had been brought. It is true, the chief justice said he would have felt great difficulty had the case come before him as a chancellor; but that the verdict had strengthened it very much. Now it was actually before him as a chancellor; and that he felt it to be so is evident, from the principles which he propounded in relation to it, and which he stated with the precision of a chancellor. In the progress of equitable administration since that decision, the time has gone by for a party to entrench himself behind what was formerly thought to be the equitable discretion of a jury, or to call it in aid of the supposed feebler power of the court; and there is little doubt that the chief justice would have ruled the cause for the defendant by a positive direction in the first instance. Rules of equity are not less precise and peremptory than rules of law, nor less a subject of exclusive administration by the court; and a verdict can no more strengthen an equity

[Patterson v. Martz.]

on an appeal by a motion for a new trial, than can a decree by a master of the rolls on an appeal to the chancellor. Yet the position taken by the court ought not to be regarded as a timid one for the time. It only shows from what small beginnings, and with what cautiousness we have wended our way towards a systematic administration of equity. The principle enforced in that case, by whatever means, is identical with the principle of the cases precedently quoted; and I take the opinion of Chief Justice Tilghman to be an authority in point, that a contract to entitle itself to the assistance of a chancellor, must have come from an immaculate source.

Now the plaintiff's purchase was subsequent to the oral contract with Packer, which, though it could not be specifically enforced by reason of the statute of frauds, was neither illegal nor void, inasmuch as it would have been a sufficient foundation for an action at law to recover damages for a breach of it; and it is decisive against the plaintiff's title that his purchase was founded, though innocently on his part, in a disregard of it. He was bound to relinquish it the instant he discovered the fact; and to insist on it now, is as bad as to have made it with a knowledge of the circumstances. Even on the broad ground of public policy it ought not to be decreed. From equity he can ask nothing but to be left to his remedy at law; for against a prior bargainee who did no more than pursue a conscionable and lawful contract to its legal consummation, he has no equity whatever.

The court, however, put the defence mainly on the ground of delay; and it certainly was an impregnable one. During the five years which elapsed betwixt the expiration of the lease to Dimmich's tenant and the origination of the present suit, the plaintiff was quiescent, while the land rose rapidly in value; and of this quiescence no explanation is given, nor excuse for it offered. Nor did the existence of the outstanding lease justify the discontinuance of the suit brought within the two years it had to run. An action of ejectment employed as a substitute for a bill in equity, as that was, lies whenever a bill would lie, and with the same direct or incidental effect. Such an action has, indeed, the integuments of an action, but it has also the bones and articulations of a bill; and a recovery by it has the substantive and essential qualities of a decree. The lease, therefore, would not have been an obstacle to the prosecution of the first ejectment brought, as it was, to assert the plaintiff's equity while the transaction was fresh; for the court might have protected the lessee's possession and exemption from costs, by its power over the execution. There was, then, an unanswered delay of seven years during which Packer's partners in the purchase were paying their contributions to the price. Nor is that all. The plaintiff's retention of his deposit left for him by the vendor at his brother's house, was equivalent to a recovery of it back, and an unqualified act of rescission; for had he not acquiesced

in the restoration of it, he ought instantly to have tendered the money again to the vendor. These circumstances show, not only backwardness and trifling, but a positive abandonment of the contract; either of which furnishes a decisive answer to a prayer for specific performance.

Judgment affirmed.