## Russell et al. *versus* Baughman et al.

1. Ejectment in Pennsylvania is an equitable action, and when brought to enforce the execution of an agreement to convey is a substitute for a bill in equity.

2. Where a party seeks to enforce specific performance of such a contract he must show that he himself has been ready, prompt and desirous of performance on his part. If he has been guilty of gross laches and unreasonable delay with regard to his rights, and by conduct long persisted in, conveyed the idea he has abandoned them, he cannot after there has been a material change of circumstances affecting the rights, interests and obligation of the parties move a court of equity to decree specific performance.

3. While the rule is not held so strictly against one who is in possession defending, yet it is generally by reason of his equities, and where these are so weak as to present no substantial grounds for protection they must yield to the general rule.

May 11th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Bedford county* : Of May Term 1880, No. 85.

Ejectment by Jeremiah Baughman and Jacob J. Barndollar against Samuel L. Russell, Thomas A. Scott, Jonathan H. Seymour, Reese D. Fell and Ella G. Fell, his wife, Harry S. Gratz, Lewis C. Gratz and Walter Gratz, the said Ella, Harry S., Lewis C. and Walter being heirs at law of Robert H. Gratz, deceased, being minors, and having for their guardian, Henry A. Stiles— and the Kemble Coal and Iron Company, to recover a tract of land, including the iron, ore and minerals upon and under it, with the exclusive right to mine, take and carry away the same. The material facts were these: On the 8th of February 1856, Frederick Mench, being the owner of a tract of two hundred and twenty-two acres of land in West Providence Township, Bedford county, executed an agreement with S. H. Tate and W. P. Schell, conveying to said parties " the right and privilege to dig, take and carry away all such iron, ore and other minerals as may be on, in and under that part of the tract of land owned by said Mench. * * * " In consideration whereof, the said parties of the second part do hereby agree to pay unto said Mench at the rate of one dollar and fifty

[Russell *v.* Baughman.]

cents for the ore and mineral right of each and every acre of land described above, in manner following, viz. : One-fourth in hand, one-fourth in one year, one-fourth in two years, and the remaining one-fourth in three years from the date hereof, the expenses of the survey to be paid by said Tate and Schell. The said Mench is to make a deed to S. H. Tate and W. P. Schell, and their heirs and assigns, for the said iron ore and other mineral right on or before the 1st May, A. D. 1856, at which time the hand-money is to be paid in full." * * *

In accordance with the agreement, twenty dollars were paid to Mench by Tate and Schell on February 8th 1856. The agreement was not recorded until September 7th 1865. The title of Tate and Schell, by a series of conveyances, became vested in the defendants.

On the 4th of Nov. 1871, Mench and his wife sold the two hundred and twenty-two acres to the plaintiffs, Baughman and Barndollar, for $4400. The deed contained no reference to the mining rights conveyed to Tate and Schell. The lands subsequently increasing in value, Mench applied to and obtained from the plaintiffs, on November 27th 1871, a release to said Mench, releasing him, "his heirs and assigns from all obligation or responsibility to them or their heirs or assigns on account of the clause of general warranty contained in said deed, so far as the same applies to any damage or loss they, Baughman and Barndollar, might sustain on account of the ore or mineral lease to Tate and Schell."

On the 30th of May 1872, the defendants leased several tracts of land to the Kemble Coal and Iron Company for a period of eleven years from April 1st 1872, and included in said lease was the tract of land in dispute. This lease was delivered and recorded July 13th 1872. In June 1872, the plaintiffs notified the iron and coal company that they owned the iron ore in the Mench tract, and on March 6th 1873 they executed an agreement with said company, allowing it to mine on said tract. This agreement was acknowledged by Baughman and Barndollar; and on the 13th of April 1873 was duly recorded.

In September 1872, the Kemble Company commenced mining. They worked about a year—expended nearly $5000—ceased operations, and notified their landlords accordingly. No money was expended upon, nor any ore taken from, the Mench tract.

In November 1878 Baughman and Barndollar applied to the Kemble Coal and Iron company for a revocation of the license granted them by the agreement of April 6th 1873. More than five years had elapsed and nothing was being done. They were receiving no rent from the Kemble Company—the latter having abandoned their leases and so notified their landlords. The contract was rescinded by the Kemble Iron and Coal Company, and subsequently this action of ejectment was brought.

13 NORRIS—26

[Russell v. Baughman.]

At the trial the defendants tendered plaintiffs the balance of the purchase-money, $325, with interest in full, but the tender was refused.

The defendants submitted, inter alia, the following points, both of which the,court, Hall, P. J., refused.

5. That if the jury believe that Tate and Schell paid Mench part of the purchase-money; that Schell went to Mench with a deed prepared to be signed by Mench and wife, and to pay to him the purchase-money then owing, which he refused; that afterwards Tate and Schell went on the ground and expended money in opening a shaft and searching for ore therein, and that Mench had knowledge of that fact; that the vendees of Tate and Schell subsequently exercised acts of ownership by leasing said property to the Kemble Coal and Iron Company, of which Baughman and Barndollar had notice; that Barndollar and Baughman sold ten acres of ground to said lessees and stood by when money was being laid out and expended by said lessees in attempting to open the ores in said ground, then they are estopped from setting up claim to the land, and the verdict can only be for the plaintiffs, the land in dispute to be released upon the payment of the unpaid purchase-money owing by defendants on the articles of agreement between Mench and Tate and Schell.

6. That an action of ejectment is a possessory action and by it possession is conceded in the defendant, that Tate and Schell having paid part of the purchase-money and taken possession, which is conceded by this action, their vendees, the defendants, are entitled to hold the land upon payment of the balance of the purchase-money, and the verdict must be for the plaintiffs for the land in dispute, to be released upon the payment of the balance of said purchase-money.

In the general charge, the court, inter alia, said:

"If a party seeking a specific performance has been guilty of gross laches, or if in the intermediate period there has been a material change of circumstances affecting the rights, interests and obligation of the parties a court of equity will refuse a decree.

"An ejectment is a substitute for a bill in equity to enforce a performance. A party cannot call upon a court of equity to enforce a specific performance unless he has shown himself ready, desirous, prompt and eager."

Verdict for plaintiffs, and after judgment thereon defendants took this writ and alleged, inter alia, that the court erred in the answers to the above points.

*Russell & Longenecker.* and *W. H. Koontz,* for plaintiffs in error.—The defendants are estopped from denying the validity of the lease. They stood by and permitted the company to expend large sums of money under the lease, and afterwards ratified the

same by their agreement to annul the same: Troxell v. Lehigh Crane Iron Co., 6 Wright 513.

The contract between Tate and Schell of the one part and Mench of the other, was an executory one, but the covenants were mutual, and it was as much the duty of Mench to have performed his part, by making a deed and demanding the balance of the purchase-money, as it was the duty of Tate and Schell to pay. "Where the acts to be done by the parties are mutual and to be performed at the same time, it is only necessary for the plaintiff to aver that he was ready and willing to perform his part:" Williams v. Bentley, 3 Casey 301.

Then, too, the defendants below were in possession of the minerals under said land. This is conceded by the form of action which is a possessory action and admits the possession in the defendants; and being in possession and having paid part of the purchase-money, and being ready and willing to pay the balance, we were entitled to have specific performance of the contract decreed: Dixon v. Oliver, 5 Watts 509; Caldwell v. Fulton, 7 Casey 480.

*John Cessna*, for defendants in error.—Plaintiffs cannot allege that there was ever any actual possession taken by Tate and Schell or those claiming under them. This part of their case they rest upon the technical plea that by bringing ejectment we concede that they are in possession. Our writ was issued November 15th 1878. When we rescinded the contract with the Kemble Company it was expressly declared that this was done in order to enable us to institute proceedings at law to try our rights and settle the title. We fail to see how the fact that our election, on the 15th day of November 1878, to consider ourselves out, and our adversaries in possession, in order to bring ejectment could possibly be any evidence that our adversaries had been in possession since 1856. It is hardly necessary to argue that the paper of Mench to Tate and Schell, dated February 8th 1856, was merely executory. One of its clauses provided for the making of a deed at a future time named therein. The same time was fixed for payment of the balance of the hand money. Without doubt such a contract was executory—did not vest title in the purchasers nor give them constructive possession: Stewart v. Lang et al., 1 Wright 201; DuBois v. Baum, 10 Id. 537. "It is the business of the vendee to move; the vendor may hold still, not so the vendee, he must be vigilant:" Miller v. Henlan, 1 P. F. Smith 265; Cadwalader's Appeal, 7 Id. 158.

It is too late to claim a specific performance: Porter v. Dougherty, 1 Casey 405; Callen v. Ferguson, 5 Id. 247; Churcher v. Guernsey, 3 Wright 84; Alley v. Deschamps, 13 Vesey 225; Merritt v. Brown, 4 C. E. Green 186; Kirby v. Harrison, 2 Ohio St

326; Roby *v.* Cossitt, 78 Illinois 638; Peters *v.* Delaplaine, 49 N. Y. 362.

Mr. Justice MERCUR delivered the opinion of the court, May 24th 1880.

Ejectment in Pennsylvania is an equitable action: Peebles *v.* Reading, 8 S. & R. 484. When brought to enforce the execution of an agreement to convey, it is a substitute for a bill in equity. When a party calls upon a court of equity to enforce specific performance he must show that he has himself been ready, prompt and desirous of performing on his part. If he has been guilty of gross laches and unreasonable delay, if he has slept on his rights, and by conduct, long persisted in, conveyed the idea that he had abandoned them, he cannot, after there has been a material change of circumstances affecting the rights, interests and obligations of the parties, move a chancellor to decree specific performance: Parrish *v.* Koons, 1 Pars. 79; Patterson *v.* Martz, 8 Watts 374; Callen *v.* Ferguson, 5 Casey 247; DuBois *v.* Baum, 10 Wright 537; Miller *v.* Henlan, 1 P. F. Smith 265; Cadwalader's Appeal, 7 Id. 158. It is true the rule is not held so strictly against one who is in possession defending. It is, however, generally by reason of his equities. When they are so weak as to present no substantial grounds for protection they must yield to the general rule. If possession be taken, and improvements be made, and expenditures be incurred, they will create a substantial equity.

The agreement under which the plaintiffs claim was executed in February 1856. It was for a mineral right, in consideration of $150, to be paid therefor. One-fourth of the purchase-money was to be paid by the first of May following, when the deed was to be executed, and the residue in three annual instalments thereafter. Twenty dollars, part of the first instalment, were paid at the execution of the agreement, and nothing more was ever paid. There was evidence indicating a willingness on the part of the vendor to convey on payment according to the contract; but no subsequent payment was made nor deed demanded. Neither the vendee nor those claiming under him took any visible possession of the premises, they made no expenditure on them, they took no ore from them. After a lapse of nearly fifteen years, the defendants in error elected to consider the plaintiffs in error in the constructive possession, and brought this action of ejectment. In the meantime the lands had become of very great value, and the plaintiffs in error sought to revive equities which they had suffered to sleep for so many years. It was too late. The time to assert them had passed.

Judgment affirmed.