# APPEAL OF THE PENNSYLVANIA R. CO.

## [J. S. MULLIN v. PENNSYLVANIA R. Co.]

### FROM THE DECREE OF THE COURT OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 9, 1888—Re-argued February 12, 1889—Decided April 8, 1889.
[To be reported].

1. A delay of six years, and sometimes less, will be regarded as laches sufficient to stay the intervention of equity; especially where the complainant has stood by and allowed the defendant to make large expenditures upon the subject-matter in controversy.

2. Where a bill prays for an injunction, for damages, and for other relief, and it appears that an injunction is not necessary to the full and adequate relief of the complainant, but that he can be fully compensated by damages, the injunction will not be granted.

(a) Under an Orphans' Court sale certain land was sold in two tracts in 1821. A stream of water passed through both tracts, of which the owner of one tract was the dominant, and of the other the servient owner.

(b) The deed for the former tract contained the following grant: "Also the right and privilege of taking and conveying the stream of water which passes through the adjoining tract, sold to Dowling and reserved from him for the use of this tract, to be conducted where it formerly was, for the purpose of erecting water-works."

(c) The deed for the latter tract contained the following reservation: "Taking and reserving to the use of the adjoining tract, sold to Parke, a right and privilege of taking and conveying the stream of water which runs through the above described tract, . . . . . where it has been formerly taken, for the purpose of erecting water-works."

(d) There was evidence that in 1821 there was a small turning mill on P.'s tract run by water taken by a race from said stream. The mill was abandoned soon afterwards and the stream used thereafter by P. and D. for agricultural purposes only. In 1875 P.'s grantee conveyed the water of the stream, by pipes, to a reservoir and stand pipe a mile distant, where it was used for railroad purposes.

(e) In 1882, D.'s successor in title, who had owned the land since 1869, filed a bill in equity praying for an injunction against the railroad company defendant, to prevent the diversion of the stream, as above, for damages for injuries occasioned by such diversion and for further relief. The court below awarded the injunction and found that the damages amounted to $75 per annum:

3. As the grant to P. in 1821 was subject to the limitation that it was for the use of the P. tract and was "to be conducted where it formerly

was," and as there was evidence that the former use was for the small turning mill, as above, the grant was limited and could not now be construed to warrant the diversion of the stream away from both tracts, for railroad purposes a mile distant, and not at all for the purposes of the P. tract.

4. As the plaintiff had stood by for seven years, without taking any legal steps to prevent the defendant from diverting the water (although there had been correspondence between counsel, and defendants had promised to pay plaintiff's claim for damages but had not done so), and had allowed defendants to expend large sums in that behalf, plaintiff was guilty of undue laches and had lost his right to an injunction, especially as his injury could be compensated in damages.

5. The plaintiff's damages should be computed by capitalizing the $75 per annum, found to be the amount of his annual damage, and adding thereto the amount due him at this rate from 1875 until this proceeding was brought; and a decree should be entered accordingly and all costs paid by the defendant.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 20 July Term 1887, Sup. Ct.; court below, No. . . . . . . . . . 1882, C. P.

On October 8, 1882, John S. Mullin filed a bill in equity against the Pennsylvania R. Co. praying;(1) That the defendants might be enjoined from conveying the waters of a stream off a certain tract of land and from using the same excepting on and for the use of said tract; (2) For damages for the injury already done the plaintiff; and (3) For further relief.

The defendants filed an answer and the cause was referred to *Mr. Wm. B. Waddell*, as examiner and master, who on September 18, 1886, filed the following report, in which the facts are fully set out:

The complainant alleges that he is the owner of a certain tract of land in East Caln township, containing about one hundred and twelve acres, which has been used for years for agricultural purposes, and has a stream of water flowing through it; that the respondent, who owns the adjoining tract, and through whose land the same stream flows, has improperly diverted this stream from its natural course, and conducted it through large pipes to the borough of Downingtown, in said county, where it is illegally used, by said company, for railroad purposes, upon the line of its railroad, and the line of the

Waynesburg railroad, whereby portions of his property are frequently short of water, and at times have been wholly deprived of the same, thus doing him great damage and irreparable injury.

The respondent admits that it is using the water of the stream in question, for the purposes of its own road, as well as for the purposes of the East Brandywine and Waynesburg railroad, but denies that such use is unlawful and illegal and is without due warrant of law. On the contrary, it avers that it is only making such use of the water as it is authorized by the rights vested in it, by due conveyances and assurances in law, to make. The only question presented for consideration is, whether the Pennsylvania Railroad Company has the legal right to use the water of the stream, in the manner it is now using it.

This use is based on an alleged grant.

The facts of the case are few, and not seriously disputed, and are as follows: Prior to the year 1821, one Samuel R. Downing was the owner of a tract of land in East Caln township, in said county, containing about one hundred and twenty acres, with the stream in question flowing through its centre. The administrators of Samuel R. Downing, deceased, under an order of the Orphans' Court, sold this real estate in two tracts, and on the second day of April, 1821, conveyed one tract, containing sixty-four acres, to Thomas A. Parke, and on the same day conveyed the other tract, containing fifty-six acres and twenty perches, to John Dowlin. The stream in question passed through both these tracts, with Thomas A. Parke as the dominant owner, and John Dowlin as the servient owner.

The deed from the administrators to Thomas A. Parke, contains the following grant: "Also the right and privilege of taking and conveying a stream of water, which passes through the adjoining tract of land, sold to John Dowlin and reserved from him, for the use of this tract, to be conducted where it formerly was, for the purpose of erecting water-works." The deed from the administrators to John Dowlin, contains the following reservation: "Taking and reserving to the use of the adjoining tract, sold to Thomas A. Parke, a right and privilege of taking and conveying the stream of water, which runs through the above described tract, on the southern side there-

of, where it has been formerly taken, for the purpose of erecting water-works."

John S. Mullin, the present complainant, is the owner of the John Dowlin tract, and has been such owner since June 29, 1869, and the Pennsylvania Railroad Company, the present respondent, is the owner of three acres of the Thomas A. Parke tract, together with the above mentioned water privileges, whatever they may be, and has been such owner since December 17, 1872.

The Pennsylvania Railroad Company, since its purchase, and as near as we can determine, during the year 1875, erected a reservoir in the borough of Dowingtown, and a stand-pipe on the line of the East Brandywine and Waynesburg Railroad, a road operated by them, and has conducted the water from this stream by pipes to these points, and is using it for railroad purposes. During certain portions of every year, the greater portion of the stream is thus led away from the complainant's property, and he has been deprived of its use for agricultural purposes.

Many years ago, a small turning mill stood upon the tract now owned by the respondent, and the stream in question, or a portion of it, was conducted by a race-way to this mill, for the purpose of running it. The oldest witness examined does not recall more than the relics of the mill. He hauled away some of the material of which it was built, more than fifty years ago. From the time this mill ceased to be operated, and until the division complained of, the stream was used by the owners of both tracts, solely for agricultural purposes. This would probably cover a period of forty years. Since the division of the stream, the rental value of the complainant's property has deteriorated from seventy-five to one hundred dollars annually.

As we have already said the facts of the case are not seriously disputed. The taking of the water is admitted, but such taking is justified by reason of a grant. The rights of the parties will largely depend upon the construction to be given to the grant contained in the Parke deed, and the reservation contained in the Dowlin deed.

The grant to Parke is, "the right and privilege of taking and conveying the stream of water which passes through the

land . . . . . sold to John Dowlin, and reserved . . . . . for the use of this tract, to be conducted where it formerly was, for the purpose of erecting water-works." The reservation from Dowlin is, "taking and reserving to the use of the adjoining tract . . . . . a right and privilege of taking and conveying the stream of water, . . . . . where it has been formerly taken, for the purpose of erecting water-works."

Does this grant and reservation give the Pennsylvania Railroad Company the right and privilege of taking and conveying the stream in question, away from both these tracts of land, for the distance of about one mile, and there use the water for railroad purposes? If so, then Mr. Mullin has no cause to complain. The grant and reservation constituted notice to him, and his enjoyment of the stream was subject to the rights of his neighbor above. If this grant confers this right, we do not think the nonuser of it for the length of time designated in this case, will deprive the respondent of the right. The grant was made April 2, 1821, and no use was made of it until subsequent to 1872. During all that period, the stream continued to flow in its accustomed channel, and nothing was done with it, by the owner of either tract, except to use it in the ordinary way for agricultural purposes.

A distinction as to abandonment by simple nonuser, is recognized, between an easement created by deed, and one created by prescription. An easement to become extinguished by disuse, must have been acquired by use, and the doctrine of extinction by nonuser, does not apply to servitudes, or easements created by deed. In the one case mere disuse is sufficient, but in the latter there must not only be disuse by the owner of the land dominant, but there must be an actual adverse user by the owner of the land servient: Angell on Watercourses, 419, 420, § 252. Time does not begin to run against a privilege reserved in a deed, until some default, negligence, or acquiescence is shown, or may fairly be presumed, in the party in whose favor such reservation is made. Therefore a reservation of a right for the grantor, his heirs and assigns, to raise the water of a stream, is not lost by the lapse of thirty-two years from the time the right was reserved to the time of exercising it: Butz v. Ihrie, 1 R. 218. The enjoyment of the natural flow of water, through the land of the owner of the

soil, is not deemed adverse, so as to give him a technical easement therein: 2 Washburn on Real Property, 298.

The same principles are recognized and declared in Nitzell v. Paschall, 3 R. 82; Yeakle v. Nace, 2 Wh. 130; Hall v. McCaughey, 51 Pa. 43; Grubb v. Guilford, 4 W. 233; Lindeman v. Lindsey, 69 Pa. 93; Erb v. Brown, 69 Pa. 216, and Bombaugh v. Miller, 82 Pa. 209.

These cases, we think, fully establish the principle, that in the case of an easement created by deed, something more than mere non user is necessary to destroy this right. In the case in hand, nothing is shown but the fact of non user. If, therefore, this respondent has the right to do what it is doing, the mere fact that it allowed this right to lay dormant many years, will not prevent it now exercising that right. This brings us to inquire whether it has the right to divert the stream in question and use it in the way we have described.

Prior to the date of the deed conveying the property to Thomas A. Parke, there appears to have been a small turning mill on these premises. The oldest witness who remembers the property, speaks of the relics of this mill. He removed the material composing the mill. He heard it spoken of. The race-way leading from the stream to this mill was marked upon the ground, and plainly visible to the eye. Many witnesses remember this race, and many speak of hearing the old mill spoken of by the older inhabitants of the place. It required a diversion of the stream, to reach this mill, and the course of the diversion was marked upon the ground in 1821.

These facts are entitled to be considered, in endeavoring to construe the force and effect of the grant in question: 2 Washburn on Real Property, 27; Angell on Water-courses, 7th ed., § 185; Kennedy v. Savill, 12 Conn. 317. The grant here is "the right and privilege of taking and conveying the stream for the use of the tract" then conveyed, "to be conducted where it formerly was, for the purpose of erecting water-works." The right is to take the stream; the manner of taking is to be as it formerly was; the use is for that tract, and the object is the erection of water-works. In other words, the grantee is entitled to take this stream for the purpose of erecting water-works, for the use of the property conveyed, but in doing this, he must conduct it where it was formerly conducted. If any

Statement of Facts.

water is left in the stream, or any water returns to the stream, after the water is thus used, it belongs to the owner below.

We can hardly conceive, that in 1821, the grantor contemplated, that the grantee, or his successors in title, would undertake to furnish the citizens of Downingtown with water, from this stream, or that the future owner, the Pennsylvania Railroad Company, would undertake to supply from this source, its great works, situated a mile away, with the water necessary to conduct its business. The contracting parties had in mind the old turning mill, its former location, and its limited necessities. The property was about to be divided, and it was proper that the purchaser of this water power should be entitled to have and enjoy it, as its former owner had, without hindrance on the part of the purchaser below. We do not think that it was intended to give him the right to put in pipes, conduct the water of the stream a mile away, and there erect his reservoir and stand-pipes, and thus use all the water, to the exclusion of his neighbor on the stream below. It is true, the object of the grant was the erection of water-works. But what kind of water-works were contemplated? The language of the grant and reservation will indicate their character. The right to take the stream was to erect works for the use of the tract conveyed, and the reservation was for the same use. The erection of water-works for the use of a tract containing sixty-four acres is one thing, and it strikes us as a very different thing from the erection of water-works to supply the engines of a large and active railroad company. The one might not be seriously objectionable to the owner below. He might reasonably believe that such works would not consume all the water of the stream, and be content to take his chances for a sufficient supply for his wants. We think the complainant is justified in construing the grant in the Parke deed, and the reservation in the Dowlin deed, to mean that the works were to be erected for the use of the Parke tract; and for the purpose of erecting such works, the water of the stream might be conducted where it formerly was.

A question was made in the course of investigation as to the right of the complainant to maintain his bill, inasmuch as he had an adequate remedy at law. It is true, that the complainant might bring his action at law, and recover damages for the

injury done, but such damage would be wholly inadequate to the vindication of his rights, and successive suits, as he might be required to institute, would be worse than the wrong itself. In Bitting's Appeal, 105 Pa. 517, the court holds that where the defendant is preventing the plaintiff from enjoying the use of the stream of water to which he is entitled, and threatens to continue to do so, a proper case is made out for an injunction. For such an injury, there would be no remedy at law except by innumerable suits, and to obviate this necessity, equity will interfere.

The acts of assembly conferring equity powers upon the courts, authorize the prevention by injunction of " acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals." We think the case in hand one calculated to be prejudicial to the rights of the complainant. Mr. Bispham, in his excellent work, says : " The modern doctrine may be stated in general terms to be, that equity has concurrent jurisdiction with courts of law, in all cases of private nuisance ; the interference of chancery, in any particular case, being justified on the ground of irreparable mischief, or of suppressing interminable litigation, or of preventing multiplicity of suits : " Bispham's Equity, 395. The same doctrine is recognized in High on Injunctions, § 502, and is followed and established in Scheetz's App., 35 Pa. 95, and Shenandoah Co.'s App., 2 W. N. 46. We therefore feel fully justified in holding, that the complainant is entitled to his remedy by bill, and, after a full consideration of the complaint, we would recommend that the defendant be enjoined from further taking and conveying the stream in question, from off the said tract of land, formerly conveyed to Thomas A. Parke, and from using the same, excepting on and for the use of said tract.

Mr. Mullin further alleges, that by reason of the illegal taking of the stream in question, portions of his property are frequently short of water, and at times have been wholly deprived of the same, whereby great damage and injury have been done him. He therefore prays that the respondent be ordered and decreed to pay to him, such sum as will remunerate him for the injury done.

The master having reached the conclusion that the railroad company, respondent, is not authorized to take and use the

water of the stream in question, in the manner it is taking and making use of the same, the inquiry arises whether the complainant is injured thereby, and if so how much. The testimony upon this point, was furnished entirely by the complainant. From the testimony it appears that prior to the erection of the works of the respondent, the water of the stream was sufficient at all times for the uses of the farm of the complainant. This property was so divided into fields that he could water two thirds of it by the stream. Since the erection of the works, he has been deprived of the use of the water more or less every year. In dry seasons, no water whatever passes down. This compels him to make other and inconvenient arrangements for watering his cattle. The rental value of the property has depreciated. The estimate of this depreciation runs from seventy-five to one hundred dollars a year.

We think the complainant has been injured, but how much it is difficult to say. The estimates of injury are based on the depreciation of the yearly rental, and these vary in amount from seventy-five to one hundred dollars. In the opinion of the master, and considering the expense and trouble the complainant would be put to, in furnishing his stock with water, it would be proper to estimate the damages done to the complainant at seventy-five dollars for each year, since the water has been diverted. Here another difficulty presents itself, and that is to determine the exact time the works were put in, and the water diverted.

The respondent might have made this clear, but has either overlooked it, or not considered it necessary to do so. Some of the witnesses think that they were erected in 1872 or 1873, others in 1873 or 1874, and still others in 1874 or 1875. The complainant himself thinks it was in 1874 or 1875. He says it was two or three years after the company purchased the property. Their deed was dated December 13, 1872. Two or three years after this would fix it in the Fall of 1874 or 1875. As this is the opinion of the complainant, and he leaves it somewhat uncertain, we have concluded to give the respondent the benefit of the doubt, and will fix the fall of 1875 as the time of the erection of the works. The complainant filed his bill in October, 1882, which would entitle him to be paid for the injury sustained for seven years, at the rate of seventy-five dollars

per year, making altogether the sum of five hundred and twenty-five dollars.

Nothing now remains to be disposed of but the costs of the proceedings, and these, in the opinion of the master, should be paid by the respondent.

To this report the defendant filed the following exceptions: (1) That it was error to recommend an injunction restraining the defendant from conveying the stream off of the Parke tract and from using the same except on and for the use of said tract; (2) that it was error to direct that the plaintiff be paid the sum of $525, for taking the water up to October 9, 1882; and (3) that the master erred in reporting that the costs should be paid by the defendant.

On September 22, 1886, the court below, FUTHEY, P. J., dismissed the exceptions and filed the following opinion and decree:

We fully agree with the master in his construction of the grant contained in the deed from the administrators of Samuel R. Downing, deceased, to Thomas A. Parke, and of the reservation contained in the deed from the same administrators to John Dowlin. Applying this construction to the facts as found, it is clear that the defendant has no authority to convey the water from the premises and use it in the way it is admittedly done.

It is also clear that the plaintiff has no adequate remedy at law, and that the proper remedy is by injunction, as recommended by the master, and that such injunction should be granted: Sheetz's App. 35 Pa. 95; Bitting's App. 105 Pa. 517; Shenandoah Co.'s App., 2 W. N. 46; Bispham's Equity, § 395.

The master had also power to assess the damages sustained by the plaintiff. The rule is, that when the jurisdiction of a court of equity attaches for such cause as that involved in this case, it has jurisdiction generally for relief, and will decree account of the damages done. This principle has been recognized in a number of authorities and applies as well to tort feasors as to matters of account: Allison's App., 77 Pa. 221; McCutcheon v. Ackland, 1 Chester Co. R. 82.

It appears by an examination made since the report of the

master has been filed, of the proceedings in the Orphans' Court, by which the court decreed the sale of the real estate of Samuel R. Downing, deceased, that no authority was given to the administrators to insert the grant of water power in the deed to Parke, or to make the reservation contained in the deed to Dowlin. The administrator was simply directed by the ordinary decree, to sell the tracts for the payment of debts, and the order of sale and returns thereto are said to contain no reference to such grant and reservation. It is therefore further contended on behalf of the plaintiff, that the administrator had no authority to insert such grant and reservation in the deeds, and being therefore inserted without authority, they are void.

We may presume that the parties took the conveyance with knowledge of their contents, but the view we have taken of the proper construction of this grant and reservation, renders it unnecessary to consider the question in the aspect thus presented. Granting that the parties are bound by them, as expressed in the deeds, we find that they do not authorize the acts of the defendant, of which the plaintiff complains.

The costs have been properly placed by the master on the defendant.

This cause came on to be heard at adjourned term of this court in December last, and was argued by counsel and thereupon, upon consideration thereof, the exceptions are dismissed and report of master confirmed. It is now, March 14, 1887, ordered, adjudged and decreed, as follows, viz. :

That the defendant be restrained by perpetual injunction from further taking and conveying the stream in question from off the said tract of land formerly conveyed by the administrators of Samuel R. Downing, deceased, to Thomas A. Parke, and from using the same, excepting on and for the use of said tract, as described in the conveyances made by the administrators of Samuel R. Downing to John Dowlin and Thomas A. Parke. And it is further ordered, that said defendant pay to said plaintiff the sum of five hundred and twenty-five dollars, the amount found by the master to be due the plaintiff, for injury sustained to October 9, 1882, the time of filing of bill in this case, together with interest on the same from that date.

And it is further ordered that said defendant pay the master's

fee of one hundred dollars, and all the costs that have occurred in this cause.

Thereupon the defendant took this appeal, assigning for error the dismissal of their exceptions, and the decree of the court.

*Mr. John J. Pinkerton,* for the appellant:

1. A reading of the deed shows that the design was to take the water from the Dowlin tract and give it to the Parke tract. There is no provision in terms or by inference that the water should be returned to the Dowlin tract. If such had been the intention it should have been expressed. A deed or grant must be construed most strongly against the grantor: Klaer v. Ridgway, 86 Pa. 534. If this was a grant of a fee, as it unquestionably was, the reference in the deeds as to how the water was "to be conducted" cannot limit or abridge in any way the use of the stream: Buckholder v. Sigler, 7 W. & S. 158; Butz v. Ihrie, 1 R. 217; Nitzell v. Paschall, 3 R. 76; Paschall v. Passmore, 15 Pa. 296.

2. The plaintiff was guilty of laches in not objecting to the defendants' works while in progress, and in not filing his bill until seven years after their completion: Cox v. Phila. etc. R. Co., 10 W. N. 553; Hibler v. Hoag, 1 W. & S. 552; Rennyson v. Rozell, 106 Pa. 407. When a party calls upon a court of equity to enforce specific performance he must show that he has himself been ready, prompt and desirous of performing on his part. If he has been guilty of gross laches and unreasonable delay, if he has slept on his rights, and by conduct, long persisted in, conveyed the idea that he had adandoned them, he cannot, after there has been a material change of circumstances affecting the rights, interests and obligations of the parties, move a chancellor to decree specific performance: Parrish v. Koons, 1 Pars. 79; Patterson v. Martz, 8 W. 374; Callen v. Ferguson, 29 Pa. 247; Du Bois v. Baum, 46 Pa. 537; Miller v. Henlan, 51 Pa. 265; Cadwalader's App., 57 Pa. 158; Russell v. Baughman, 94 Pa. 404.

*Mr. Joseph Hemphill,* for the appellee:

1. "For the purpose of ascertaining what parties really intended, by a reservation in a grant of a watercourse, it is un-

doubtedly proper to take into consideration the condition of the
property and the circumstances of the parties:" Angell on
Watercourses, 7th ed., § 185. When the deed purporting to
grant the easement was executed, April 2, 1821, the present
borough of Downingtown was a small village; the country in
the vicinity sparsely settled; no railroad had yet been built in
the United States; nor had the steam locomotive been invented.
The two tracts conveyed respectively to Parke and Dowlin, up
to that time had composed but one tract, through which the
stream in question ran and upon which there stood a small
turning mill, the motive power for operating which, was fur-
nished by said stream, conducted by a race-way to the mill site.
Is there, then, anything in either the circumstances of the parties,
the condition of the property or the language of the grant, to
support the claim here made by the appellant, viz., the right to
conduct the stream of water from off the Parke tract to a
reservoir at Downingtown, a mile distant, for the use of appel-
lant's railroad?

2. The plaintiff made demands upon the defendant for a
settlement of damages within a few weeks from the time the
defendant's works were commenced, and were kept in constant
expectation of a settlement by defendant's counsel, from that
time on. In McLaughlin v. Shields, 12 Pa. 291, ROGERS, J.,
said: "In this case we see no evidence of abandonment; and
although eighteen years have elapsed since the settlement, yet
that the controversy has not been brought to an end, would not
seem to be owing to any unreasonable delay on the part of the
plaintiff. He has, it would appear, been continually pressing
his claim, for this is not the first action of ejectment. Another
was brought, in which he was compelled to suffer a nonsuit in
consequence of a failure to tender the exact amount of the pur-
chase-money. So far from his abandoning his right, his impor-
tunities were complained of by Craig, who said Shields had
been pestering him for some time."

OPINION, MR. JUSTICE GREEN:

We are of opinion that the master and the learned court
below were correct in their interpretation of the grant contained
in the deed to Thomas A. Parke in 1821, and the reservation
in the deed to John Dowlin. It is true the right to take the

water includes all the water of the stream, and it was to be taken for the purpose of erecting water-works. But the grant was also subject to the limitation that it was for the use of the Parke tract, and it was "to be conducted where it formerly was." There was evidence that the water had been formerly taken by a race-way for the use of a small turning mill which was abandoned many years ago, but of which there were still some remains at a time within the memory of one or more of the witnesses.

We do not see how so limited a grant as this can be now used to divert the water of the stream entirely away from both tracts a distance of a mile or more by means of iron pipes, and the water used, not at all for the purposes of the Parke tract, but for supplying the engines of a railroad company, or the inhabitants of a town. So far as this branch of the case is concerned, therefore, we think there was no error in the conclusions of the master and court below.

The plaintiff's bill, however, prayed not only for an injunction but also for compensation for the injury done him, and the master proceeded to determine what that compensation should be. Upon a review of the testimony he concluded that the plaintiff was injured to the extent of an annual reduction of $75 in the rental value of his land, and he allowed him that amount aggregated for seven years, being the time between the erection of the appellant's works and the filing of the bill. We think this allowance was reasonable and was justified by the evidence. But he also recommended and the court entered a decree for a perpetual injunction restraining the appellant from any further taking of the water. In this we think there was error inasmuch as it appeared that the plaintiff had stood by and permitted the defendant to proceed with the erection of its works and diversion of the water at a very heavy expense without taking any legal steps to prevent it for so long a period as seven years. It is true there was correspondence between the counsel for the plaintiff and defendant upon the subject, in which the claim of the plaintiff for compensation was presented, and there was a promise that it should be considered, which does not seem to have been done. Nevertheless, the plaintiff took no active steps till he filed the present bill, in 1882, seven years after the water was diverted.

Opinion of the Court.

We think this was undue laches and that it would be very oppressive to interfere by injunction at this late day, the more especially as the plaintiff's injury is entirely susceptible of compensation, and he has asked for that relief in his bill.   It has been many times held that long delay, and sometimes a delay of even less than six years will be regarded as laches sufficient to stay the intervention of equity : Ashhurst's App., 60 Pa. 317 ; Evans's Appeal, 81 Pa. 278 ; Russell v. Baughman, 94 Pa. 400 ; Kerr on Injunctions, 202 ; Todd's App., 24 Pa. 429 ; Neely's App., 85 Pa. 387 ; Rennyson v. Rozell, 106 Pa. 407 ; Cox v. P. W. & B. R. Co., 10 W. N. 553.   An injunction is not at all necessary to the full and adequate relief of the plaintiff and there is therefore no occasion to award it.   We think the plaintiff is entitled to compensation for his injury, but it should be complete compensation, and when ascertained it should be final.   It should not be excessive or unreasonable, and it should not be allowed as annual damages, but as the price of the privilege to continue the use of the water.   As the master has ascertained the measure of the injury by an annually recurring sum, it is only necessary to capitalize that amount and add it to the amount due to the time of the decree in this court, and thus give the plaintiff complete compensation, which we accordingly do.

> Now, to wit, April 8, 1889, so much of the decree of the court below as awards an injunction against the further taking and conveying the water of the stream in question, is reversed, and so much thereof as awards the sum of $525 to the plaintiff is changed and modified, and it is now ordered, adjudged, and decreed that the defendant pay to the plaintiff the sum of twenty-two hundred and sixty-two dollars and fifty cents, in full satisfaction and payment of all damages sustained by the plaintiff by reason of the defendant taking and using the water of said stream, and for the right and privilege of continuing to take and use the same hereafter; and it is further ordered that all costs, including the costs of this appeal, be paid by the defendant, and that the record be remitted to the court below.