## WINTLE v. UTAH-IDAHO SUGAR CO.

No. 4613.   Decided December 31, 1928.   (273 P. 312.)

*Le Roy B. Young,* of Ogden, for appellant.

*Richard W. Young,* of Salt Lake City, for respondent.

GIDEON, J. This case was argued and submitted at the October term, 1927. An opinion was rendered reversing the judgment on March 22, 1928; STRAUP, J., dissenting. Thereafter, in September, a rehearing was granted. The case was again argued and submitted on October 8, 1928. We have re-examined the record. Also the briefs originally filed as well as additional briefs filed on the rehearing. From such examination a majority of the court is still of the opinion that the rights of the defendant to defeat the claim of plaintiff's assignor must be measured by the damage sustained, if any, by the defendant occasioned by the breach of the contract on the part of plaintiff's assignor. We therefore adhere to our former holding, and now publish the original opinion which will stand as the opinion of the court in the case, STRAUP, J., dissenting.

In this case the complaint sets forth fourteen independent causes of action separately stated. Plaintiff brings the suit in his own right and as assignee of thirteen others

claiming rights similar to his own. The several causes of action are founded upon like facts. The parties stipulated the facts as to the fifth cause of action, and the matter was determined upon such stipulation. It was understood that the court should retain jurisdiction of the other causes of action stated in the complaint until the rights of the parties are finally determined under the stipulation made. The court rendered judgment in favor of the defendant. This appeal is from that judgment.

Judgment in this case relates only to the fifth cause of action. The complaint as to that cause of action alleges that in the year 1921 the owner of the claim set forth therein sold and delivered sugar beets to the defendant (respondent), and that the amount claimed remains due and unpaid. The sugar company admits the sale and delivery of the beets, and that the amount claimed has not been paid. It justifies its nonpayment, as will later appear, and upon the grounds hereinafter set forth. The stipulation of facts recites that in the fall of 1921 plaintiff's assignor sold and delivered to the defendant company certain sugar beets pursuant to the terms and stipulations of a certain contract, which contract, among other things, contained the following provision:

"Any advances made to the grower [plaintiff's assignor] by the sugar company the grower agrees to repay and the repayment thereof shall be deemed secured by a first lien on the crop of beets above referred to; and the sugar company shall have the right to deduct any amount owing to it by the grower from whatever may be due the grower for beets delivered."

It is further stipulated that in the fall of 1921 there became due to plaintiff's assignor from the defendant for beets delivered the sum of $67.20, and that the defendant refused to pay the same, but applied the amount due upon an account claimed by the defendant to be owing to it from the grower for the lease value of certain water used by him upon lands not included within the description of the

premises described in the deed, under and by which he claimed the right to use the water. It is stipulated that on the 24th day of March, 1921, a written contract was entered into between plaintiff's assignor and the Hammond Canal Company whereby the canal company, "subject to the terms and conditions herein set forth and mentioned, agrees to convey through its canals and laterals water for the irrigation of, and for culinary and domestic consumption on the following described tracts of land situated in the county of Box Elder, State of Utah, to wit," etc. Here follows a description by metes and bounds of the lands for which water was agreed to be furnished. The combined area of the two pieces described is 30.66 acres. The contract further provides that the parties thereto "will faithfully observe and be bound by all and singular the terms, conditions and covenants hereof and of that certain resolution of the Board of Directors of said company respecting the sale of water-rights, duly passed on the 19th day of April, 1920, and recorded on the 1st day of May, 1920, at page 338 of book H of Water of the records of said County of Box Elder, which said resolution is hereby referred to and in all respects made a part of this contract." On the same day, and as a part of the same transaction, the Hammond Canal Company, as grantor, conveyed a perpetual right to plaintiff's assignor "to receive from the canals of the said grantor water for irrigation, culinary and domestic uses on the following described tract of land situate in Box Elder County, Utah." Then follows a description of the same premises mentioned in the contract.

Following the description of the premises, the deed recites:

"The right hereby conveyed is clear and unincumbered by any act done or suffered by the said grantor or its predecessors in interest and is subject to the annual rental therefor, and to all and singular the rules, regulations, limitations, covenants and agreements of the said contract, which are hereby referred to and made a part of this deed."

In the resolution of the board of directors of the canal company, referred to in the contract dated March 24, 1921, and made a part of that contract, it is, among other things, provided as follows:

"2. That this company will carry through its canals and laterals out of the water flowing from Bear River, during the irrigation season between the first day of May and the first day of the succeeding November of each year such number of cubic feet per second of water as shall equal, if desired by the consumer, but not to exceed, one cubic foot per second flow for each eighty acres, and proportionately for any greater or less number of acres of the land described in the consumer's contract.

"4. That the water conveyed shall be used either for irrigation, culinary or domestic purposes upon the land described in the contract and not elsewhere.

"9. That each and all of the terms, conditions and covenants of any water contract, inclusive of those expressed in the resolution, shall extend to and bind the successors and assigns of this company and the heirs, representatives, successors and assigns of the consumer.

"11. That the use of the water contracted for shall be governed and regulated by the company; and the latter may from time to time either allot to the consumer certain hours for the use of water (of which allotments it shall cause him to be duly notified) or, at its option, may give the consumer a continuous flow. The consumer will use the water furnished him carefully and without waste. That all gates, weirs and other devices for the distribution of water on the company's canal and laterals shall be owned and controlled by the latter. The water shall be delivered by the company into a lateral or ditch to be provided by the consumer from a box or weir through the banks of the company's canal or lateral to be provided by it. The consumer will use no more water than his contract authorizes, and only at such stated times as shall be designated by the company and distributed to him by its watermaster and will not furnish water to any other person on penalty of forfeiture of his right to use water during the remainder of the season.

"15. That when the consumer shall have paid for the perpetual water right in full, and shall have faithfully complied with all the terms and conditions of his contract, he shall receive from the company a deed conveying a clear and unincumbered perpetual water right for land described in the contract, subject to an annual rental

thereafter and to all and singular the rules, regulations, covenants and agreements of his contract."

It will thus be seen that, by the terms of the water contract, not only the provisions of that contract but of the deed made in pursuance thereof, and the resolution of the board of directors of the canal company, all enter into and constitute the contract between the parties. We have copied only such parts of the contract, deed, and resolutions as in our judgment, considered in connection with the stipulations made by the parties hereinafter to be noted, are necessary to consider in determining the questions presented by this appeal.

It is stipulated that the Hammond Canal Company is a corporation and "is now existing for the purpose of owning, controlling, acquiring, holding and distributing by sale or by lease to the said Le Grand Hunsaker [plaintiff's assignor in the fifth cause of action] and others who contract with it water from the natural flow of Bear River and storage water in Bear Lake for irrigational and culinary purposes upon the lands described in the contracts made, or to be made and entered into between said corporation and the various purchasers or lessors of such water; * * * that the water so contracted to be supplied to the said Le Grand Hunsaker under the terms, stipulations and conditions of said Exhibits A and B [contract and deed] was and is carried through the canals and laterals belonging to and owned by the said Hammond Canal Company and was and is delivered to the said Le Grand Hunsaker for use upon said described lands at appropriate headgates in said canal system; that the defendant Utah-Idaho Sugar Company, during the year 1921, and ever since then was, and now is, the owner of all the issued and outstanding capital stock of the Hammond Canal Company, and in the event this court shall find and determine that the said Hammond Canal Company was entitled to charge the said Le Grand Hunsaker for water used on the additional lands during 1921 than

those described in said Exhibits A and B said court shall also find that the amount so deducted and withheld by the said Utah-Idaho Sugar Company was rightfully and legally deducted and withheld."

The stipulation further recites:

"That during the irrigation season of 1921 the said Le Grand Hunsaker was issued a schedule by the said Hammond Canal Company according to the terms, stipulations and conditions of said water contract and deed for perpetual water right * * * for the water to which the said Le Grand Hunsaker was entitled thereunder to irrigate any and all crops planted or to be planted upon the lands therein described; that during said irrigating season of 1921 the said Le Grand Hunsaker watered and irrigated said lands described in said Exhibits A and B under said schedule and in addition watered and irrigated 8.4 acres of the lands owned by him and contiguous thereto, and not described nor covered in said Exhibits A and B; that the lease value of the water so used by said Le Grand Hunsaker upon the said 8.4 additional acres during the season of 1921 was $67.20. * *

"That said water schedule so issued by the Hammond Canal company to Le Grand Hunsaker for the year 1921 gave him a definite sized stream flowing through the headgate of said canal for a period of seven hours 45 minutes per week on the tract of land containing 7.66 acres and twenty-three hours per week upon the tract of land containing 25 acres, which schedule began May 1st and ended November 1st, and that the said Le Grand Hunsaker used during the year 1921 only that water which was scheduled to him for the irrigation of said land."

The appellant assails the judgment upon the following grounds, as stated in his brief:

"A. That defendant's answer does not state facts sufficient to constitute a defense.

"B. That there is no contract, express, or implied in fact, or in law, that Hunsaker would pay anything for this water which was delivered to him by the company pursuant to his schedule.

"C. That the provision in the contract and deed, relied on by defendant, is void because of the impossibility of performance.

"D. That the provision in the contract and deed, relied on by defendant, is void as being against public policy.

"E. That the same is void for the reason that it is an unlawful restriction upon the power of alienation.

"F. That, if said provisions are not void, defendant's only remedy would be to sue for damages and until such damages were determined and liquidated there would be no liquidated claim upon which defendant would have a right to withhold money."

The pleadings consist of the complaint, the answer, and reply. No demurrer to the answer, either general or special, was filed in the lower court. The answer contained a denial and an attempted allegation of setoff against the demands of plaintiff. A stipulation of facts was entered into by the parties, and the case was submitted and determined on the facts so stipulated. There was no suggestion anywhere in that stipulation, or elsewhere in the record, that the issues relied upon were not well pleaded. If there be any doubt as to the sufficiency of the pleadings to present the claim of set-off relied upon by defendant to defeat plaintiff's action, such doubt, if the question be raised for the first time in the appellate court, will be resolved in favor of the sufficiency of the pleadings. The rule applicable is stated in 3 C. J. at page 727, as follows: "The general rule is that the appellate court will consider only such issues as were both raised and relied upon in the lower court. But, where a case has been tried without objection as though the pleadings raised a certain issue, the objection that the issue was not raised by the pleadings, or that the issues were not complete, cannot be made for the first time in the appellate court, and especially is this true where the pleadings, by a reasonable interpretation or fair construction, can be held to present and raise the issue."

In support of its affirmative defense it is alleged by defendant that between May 1 and November 1, 1921, it furnished Le Grand Hunsaker, plaintiff's assignor, sufficient water from its canal system to irrigate 8 acres of land belonging to the said Hunsaker, and that the reasonable rental value of the water so furnished was $8 per acre. In our judgment, this allegation is sufficient as against an objection raised for the first time in this court.

Both in the oral argument before this court and in their written briefs counsel have discussed at length the objections urged by appellant against the judgment. As we view the matter, however, the serious and controlling question presented by the record is this: Is the judgment supported by the stipulation of facts considered in connection with, and in relation to, the contract between the parties?

It, of course, is conceded that it is the duty of a court to determine the intent of the parties to a contract from the language used in the contract, if such language is clear and unambiguous. It quite conclusively appears from the terms of the contract between the parties here that the canal company undertook to furnish and deliver to the consumer, in this case Mr. Hunsaker, sufficient water to irrigate the two tracts of land described in his contract and deed, and to furnish sufficient water for such purpose so long as the maximum amount required did not exceed the limit fixed by the contract. It is also equally apparent that it was a breach of the contract by Mr. Hunsaker to use any part of the water so furnished him by the canal company on lands other than those described in his contract and deed. The stipulation of facts is silent on the question of whether appellant's assignor in the year in controversy received from the canal company any water in excess of the amount necessary and required for the irrigation of the lands described in the deed and contract. One the contrary, the inference from the facts stated in the stipulation, if there can be any inference, rather negatives the claim, if such claim is made, that appellant's assignor received a greater amount of water than was necessary to irrigate the lands described in the deed and contract. It is true that in the stipulation quoted it is stated that, if the court shall determine that the canal company was entitled to charge appellant's assignor for water used on lands additional to the lands described in the contract and deed, then the court shall find that the amount deducted by responent and withheld by it was rightfully deducted

and withheld. It is, however, further stipulated that, at the beginning of the irrigation season in 1921, the canal company issued to appellant's assignor a schedule "according to the terms, stipulations and conditions of said water contract and deed for perpetual water right * * * for the water to which said Le Grand Hunsaker was entitled thereunder to irrigate any and all crops planted or to be planted upon the land therein described." It is further stipulated that, during the irrigation season of that year, appellant's assignor not only irrigated the land described in the deed and contract under such schedule of water, but, in addition, 8.4 acres of land owned by him and contiguous to the lands described in the deed and contract, and that the rental value of sufficient water to irrigate such additional land is the amount of defendant's claim, to wit, $67.20. It is also further stipulated that the schedule furnished Mr. Hunsaker gave him a stream of definite size, and that he used during that irrigation season only such water as was included within this schedule. It thus appears that the only water used by appellant's assignor during the irrigation season of 1921 was the water given him under the schedule furnished by respondent, and, further, that the schedule was for the amount or quantity of water "to which the said Le Grand Hunsaker was entitled thereunder to irrigate any and all crops planted or to be planted upon the lands therein described." It is not claimed that there is any express agreement found anywhere in the record whereby Mr. Hunsaker undertook or agreed to pay any amount for the use of the water furnished him on lands not described in the contract and deed. If appellant's assignor is liable for such use of the water, his liability must result from an implied contract to pay for such use or grow out of damages resulting to the respondent from a breach of contract. If the stipulation showed that appellant's assignor received more water during that irrigation season than he was entitled to receive for the irrigation of the lands described in the contract and deed, and used such

excess water for the irrigation of lands not described in the contract and deed, then, in our judgment, there would be an implied contract on the part of appellant's assignor to pay the reasonable rental value of the use of such excess water, and hence sufficient facts to sustain the judgment. It not appearing that appellant's assignor received more water than was necessary for the irrigation of the lands mentioned in the deed and contract, the use of the water received by him and used on lands not described in the deed and contract would constitute only a breach of the contract on his part, and the extent of his liability would of necessity be measured by the injury or damages sustained by respondent by reason of such breach. The offset' or claim relied on by respondent to defeat the claim of appellant's assignor is based upon the claimed rental value of the use of water on land not included within the deed and contract, and not upon the theory of damages which respondent had sustained by reason of such use. In the absence of stipulation or evidence in any way relating to the amount of damages, if any, other than nominal damages, sustained by reason of the breach on the part of appellant's assignor, it must be held that there were no facts before the court to sustain its ruling denying judgment to appellant herein for the amount alleged to be due Hunsaker for the beets furnished to the respondent by him. The answer admits the delivery of the beets and the amount due under the contract of delivery.

If upon a retrial of this case it shall be stipulated or appear by proof that Hunsaker received more water than was required or necessary for the irrigation of the two tracts of land described in his contract and deed, then, in our judgment, the fair rental value of the use of such additional water on the 8.4 acres will be the measure of Hunsaker's liability and of respondent's rights. If it shall not appear that appellant's assignor received more water than was required or necessary for the irrigation of the two tracts of land described in the deed and contract, then and

in such event the measure of Mr. Hunsaker's liability will be the injury resulting to respondent by reason of such breach of contract.

Respondent has cited and relied upon the opinion of the Supreme Court of Colorado in the case of *Wright* v. *Platte Valley Irr. Co.*, 27 Colo. 322, 61 P. 603. The contract existing between the parties to that litigation was in many respects similar to the contract between the parties here. The remedy sought in that atcion, however, was not the rental value of the water or damages sustained by the irrigation company, but the relief sought was to enjoin the owner of the land from using the water on lands not described in the contract between the parties. It will thus be seen that the issues determined by the court in that case were not the same as the issues presented by the pleadings in the instant case, and the rights of the parties here are not controlled by the same rules of law applicable to the question determined by the Colorado court in that action. Among other cases cited and relied on by respondent may be mentioned the following: *Minneapolis Mill Co.* v. *Hobart*, 26 Minn. 37, 1 N. W. 45; *Mullin* v. *Penna. R. R. Co.*, 125 Pa. 189, 17 A. 478; *Eastern Penna. Power Co.* v. *Lehigh Coal & Nav. Co.*, 246 Pa. 72, 92 A. 47, Ann. Cas. 1916D, 1000. Also 3 *Farnham, Waters & Water Rights*, p. 228; 3 *Kinney on Irrigation & Water Rights* (2d Ed.) p. 2727, § 1514; 40 Cyc. p. 833.

It is not necessary to consider the other objections urged against the validity of the judgment of the trial court.

It follows from what has been said that the judgment of the district court must be, and it accordingly is hereby reversed. The cause is remanded to the district court, with directions to grant the parties a new trial. Appellant to recover his costs.

THURMAN, C. J., and CHERRY and HANSEN, JJ., concur.

STRAUP, J.   I dissent.

As is seen under the contract, the respondent was to furnish the assignor of the plaintiff sufficient water to irrigate 30.66 particularly described acres of land, not to exceed one cubic foot per second flow for each 80 acres and proportionately for any greater or less number of acres, which waters were to be used by the plaintiff's assignor only on such described lands, and "not elsewhere." The 30.66 acres were a part of a tract of 41.63 acres owned by plaintiff's assignor. During the irrigation season in question, the assignor admittedly used the water furnished him by the respondent to irrigate, not only the 30.66 acres, but also irrigated therewith 8.40 acres in addition.

The plaintiff asserts and the respondent denies, that, notwithstanding the provision in the contract to use the water only on the described 30.66 acres and not elsewhere, nevertheless his assignor had the right to use the water on any land desired by him, if by so doing he cause no additional burden or expense to the respondent, and that any provision in the contract to the contrary was void and unenforceable. As I understand the effect of the prevailing opinion the assignor had no right to use any of the waters supplied him by the respondent on the additional 8.40 acres, and that his so using the waters was in violation of his contract; yet, since the respondent based its claim, its demand for compensation for the use of such waters on such additional land, on the basis of the rental value thereof, and not on the theory of damages sustained by the respondent, and as it was not stipulated nor shown by evidence the amount of damages it so sustained, the respondent was entitled to only nominal damages. Still, the opinion asserts that, if it be or if it had been shown that more water than was necessary to irrigate the described 30.66 acres was used by the assignor, the respondent was entitled to compensation on the basis of the rental value for the excess used on such 8.40 additional acres. In other words, the effect of the holding is that, if an excess of water was used by the assignor, he, on the

theory of an implied contract, or of an obligation or a duty, created or imposed by law, was required to pay the reasonable rental value of the use of such excess; but, if the assignor did not use more water in irrigating the described 30.66 acres and the additional 8.40 acres than was necessary to irrigate the 30.66 acres, then the respondent was not entitled to recover, unless upon allegations and proof of special damage or of an additional burden or expense to the respondent, as the direct result of such use. Such a holding as it seems to me does not give sufficient importance nor proper legal effect to the clause of the contract that the waters supplied the assignor by the respondent were to be used exclusively on the described 30.66 acres and not elsewhere, is inconsistent with the stipulation of the parties as to compensation, and in substance, is in line with the contention of the plaintiff that his assignor, notwithstanding the clause referred to in the contract, could use the water partly on the described 30.66 acres and partly on other lands, or the whole or any part thereof on an entirely different tract of land, so long as he did not use more water than was necessary to irrigate the 30.66 acres; and, unless special damages to the respondent, not benefits to the assignor, are shown, such a use, though in violation of the contract, would but be damnum absque injuria.

I think such a holding is in violation of, or not within, the contractual relation between the parties, and is inconsistent with the stipulation entered into between them. The chief contention of the plaintiff is that the contract entered into between the parties is invalid because of inconsistencies of its terms, and that the clause restricting the use of the water to the described 30.66 acres is against public policy and in restraint of alienation, and therefore void. Most of plaintiff's brief is devoted to such question. I think the contract valid and enforceable.

In 3 Farnum, Water and Water Rights, under the heading "Grant For Use on Particular Premises," the author at page 2286 says:

"The grantor may limit the right to use the water to a particular parcel of land so that it cannot be applied even to the same use upon other property."

On page 1923 the author further says:

"The consumer obtains only the rights which he has bargained for, and therefore a ditch company can enjoin a customer from using water from the company's ditch to irrigate a tract of land in addition to the one to which such use is limited by contract even though he is not using a larger amount of water than allowed by the contract."

In 3 Kinney on Irrigation and Water Rights (2d Ed.) p. 2727, the author says:

"Where a water company enters into a contract to furnish water to a consumer, the extent of the rights of such consumer is limited by the terms of the contract. The consumer only acquires such rights as he bargained for and no more. The contract with a company to deliver to the consumer so much water as may be necessary to irrigate a certain specified tract of land, is construed to limit the right of the consumer to the amount of water necessary to irrigate such tract. Where the company agrees to furnish water sufficient to irrigate a certain number of acres, the consumer only acquires the right to have so much water furnished and for such lengths of time as the land, in its existing conditions, requires. So, where a consumer admitted that he irrigated another tract of land from the surplus after watering the tract described, he admitted the violation of the contract, even though he was not using more water than the maximum amount provided for in the contract."

The case of *Minn. Mill. Co.* v. *Hobart,* 26 Minn. 37, 1 N. W. 45, is especially in point. There the mill company granted and conveyed to Smith water to be used on specifically described land. He sold a part of the water right to another from whom Hobart leased and used the water on lands other than those described in the deed of conveyance. There it was asserted, as here, that the mill company was not entitled to recover at all, and, secondly, if so, it was entitled to recover, not the value of the use of the water, "but only nominal dam-

ages, because no special damages are shown." The court held against both such contentions, and in doing so, among other things, observed:

"The restrictions as to the manner in which, and purposes for which the water should be taken, are not repugnant to, but are descriptive of, the right granted. It follows, that until the water-powers should be withdrawn from the canal as authorized by the deed, they belonged to the plaintiff. Any person taking water from the canal, except as authorized by the plaintiff, would be liable to it in damages to the extent, at least, of the value of the amount taken. The defendant having taken water without authority is so liable."

To that effect is also *Wright* v. *Platte Valley Irr. Co.*, 27 Colo. 322, 61 P. 603. So, too, in principle are the cases of *Mullin* v. *Pa. R. R. Co.*, 125 Pa. 189, 17 A. 478, and *Eastern Pa. Power Co.* v. *Lehigh Coal & Nav. Co.*, 246 Pa. 72, 92 A, 47, Ann. Cas. 1916D, 1000, and cases there noted.

Here under the terms of the contract the assignor acquired the right to the use of respondent's water only to irrigate the 30.66 acres. Any other use made by him of the waters clearly was unauthorized. The so taking and using the water on the 8.40 acres by the assignor was wholly without his contract. The taking may not be justified thereunder, and was as though no contract existed between the parties, and as though the assignor otherwise without right or permission had taken the respondent's water and used it for his own use and benefit. That he in such case became liable to the respondent for at least the reasonable value of the unauthorized use of such waters on the 8.40 acres, in the same manner and to the same extent as would result in any other unauthorized taking and using of water belonging to the respondent, seems clear to me.

And further as to this: What chiefly divided the parties was the question of whether the assignor of the plaintiff had the right, notwithstanding the clause in the contract referred to, to use any of the waters supplied him by the respondent to irrigate lands other than those described. The

plaintiff asserted the affirmative and the respondent the negative of the proposition. So, among other things, it was stipulated by the parties that "the lease value of the water so used" on the "8.40 additional acres during the season of 1921 was $67.20," the amount withheld by the respondent. They further stipulated that if the court found and determined that the respondent "was entitled to charge for water used on the additional lands," the 8.40 acres, then the court "shall also find that the amount so deducted and withheld by the Utah-Idaho Sugar Company was rightfully and legally deducted and withheld." Thus by the stipulation it is stipulated that, if the respondent "was entitled to charge for the use of waters" used on the 8.40 acres, then such charge was stipulated to be $67.20, and that such amount "was rightfully and legally deducted and withheld." In view of the stipulation, it thus seems to me that all objections and points made with respect to questions of damage, or that the stipulation or evidence did not show the amount of damages sustained by the respondent, or under what circumstances the respondent was entitled to the reasonable value of the use of the waters used on the additional acres and when not, and the observations made with respect thereto, are inconsistent with, and controlled by, the stipulation. As to all such matters the stipulation reduced the question to the proposition: Was the respondent entitled to make a charge—entitled to compensation—for the use of the waters used on the additional 8.40 acres? If so, then the amount of such charge or compensation was stipulated to be $67.20, and that it was rightfully and legally withheld. Thus under the stipulation and under the authorities I think it clear that, when the plaintiff's assignor made an unauthorized use of the waters supplied him, and used them on land on which he had no right to use them, he became liable to the respondent on an implied contract for, or on an obligation or duty imposed by law to pay, the reasonable value of the use of such waters, stipulated by the parties to be $67.20.

I therefore think the judgment should be affirmed.