# Woodring, Appellant, *v.* Hollenbach.

*Waters—Deed—Grant—Reservation—Trespass.*

In an action of trespass for the alleged wrongful use of the waters of a spring, where it appears that both plaintiff and defendant derived title from a common grantor, and that in defendant's deed there is a grant of all the waters of a spring for the use of a gristmill on defendant's land, and in plaintiff's deed there is a reservation of all of the waters of the spring for the use of said gristmill, the defendant has no right to use any of the waters of the spring for domestic purposes; and in such a case it is im-

material that the defendant used only a small quantity of the water for domestic purposes, and especially so where it appears from the size of the pipes that he did not intend so to restrict himself in the future.

Argued Feb. 4, 1902.    Appeal, No. 265, Jan. T., 1900, by plaintiff, from order of C. P. Lehigh Co., Jan. T., 1899, No. 52, refusing to take off nonsuit in case of Wesley J. Woodring v. Frank Hollenback.    Before McCollum, C. J., Mitchell, Dean, Fell, Brown and Mestrezat, JJ.    Reversed.

Trespass to recover damages for wrongful use of water. Before Albright, P. J.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*T. F. Diefenderfer* and *John Rupp*, for appellant.—Grants or reservations like this must always be construed in the light of the surrounding circumstances, and the meaning and intention of the parties to the grant or reservation should always be ascertained and followed if possible: Foster & Co. v. Runk, 109 Pa. 291; Case v. Cushman, 3 W. & S. 544; Doster v. Friedensville Zinc Co., 140 Pa. 147; Edelman v. Yeakel, 27 Pa. 26.

The grantor of a water privilege may restrict the purpose for which it is to be used, and when restricted it can be exercised for no other purpose than that prescribed: Darlington v. Painter, 7 Pa. 473; Washabaugh v. Oyster, 18 Pa. 497.

Here the grant is the privilege to use the water of the spring by the owner of the mill property for the use of the running of the mill.    In this grant there is an implied restriction that the water shall not be used for any other purpose: Penna. R. R. Co.'s Appeal, 125 Pa. 189; Doster v. Friedensville Zinc Co., 140 Pa. 147.

*Edward Harvey*, with him *Arthur G. Dewalt*, for appellee. –The grant must be construed most strongly against the grantor: Klaer v. Ridgway, 86 Pa. 534.

A construction of a grant which would restrict the grantee to the specific use for which the grant is first applied is not favored, and will not be adopted unless the language of the

grant unmistakably indicates an intention to restrict the use: Davis v. Hamilton, 6 Pa. Superior Ct. 562 ; Cress v. Varney, 17 Pa. 496 ; Iszard v. Mays Landing Water Power Co., 31 N. J. Eq. 511.

Not only must a grant be construed most strongly against the grantor, but another rule of interpretation is, that it must be construed so as to carry out the manifest intent of the parties, having due regard to all the circumstances of the parties, and the situation at the time when the grant was given ; and considering also a reasonable expectation of probable future events in regard to such circumstances and such situations : Alden's App., 93 Pa. 183 ; Penna. R. R. Co. v. Mullin, 23 W. N. C. 503 ; Madore's App., 129 Pa. 15 ; Edgett v. Douglass, 144 Pa. 95.

OPINION BY MR. JUSTICE MESTREZAT, March 3, 1902 :

The plaintiff and defendant are the owners of adjoining tracts of land in Whitehall township, Lehigh county. They derived title through a common grantor, Jeremiah Ritter assignee for the benefit of creditors of Thomas Bertsch. In the deed of the defendant is the following grant: " Together also the sole and exclusive right for the owner or occupier of the said gristmill, their or his heirs and assigns forever, the use of the waters of the spring known as the Sand Spring, and the outflow, without any interruption or molestation whatsoever for the use of said mill ; the outlet of said spring to remain in the same place as at present." The plaintiff's title contains the following reservation : " Together also the use and right and liberty and privilege of the owner of the gristmill, known as Woodring's mill, his heirs and assigns forever, the use of the water of the spring known as the Sand Spring, and the outflow, without any interruption or molestation whatsoever, for the use of said gristmill, and the outflow of said spring to remain in the same place as at present." Sand spring issues out of the plaintiff's land and Woodring's mill is on the defendant's land. The mill was operated by water power until 1883, when steam was introduced and was thereafter used in operating the mill. The natural flow of the water from the spring is over plaintiff's land to Coplay creek, entering it about a quarter of a mile below the defendant's mill. Thomas Bertsch carried the

water from the spring in an overhead conduit to the mill and used it in running the mill from 1875 for about eight years. This mode of conducting the water to the mill was then abandoned. The defendant became the owner of the mill premises in March, 1886. He did not use the overhead conduit and the water was not again used at the mill until 1898. In that year the defendant laid a four inch iron pipe from the public road to the head race in the cellar of his mill. The water was brought from Sand spring to the road in an artificial channel and was taken from that point to the mill in the pipe. In the spring of 1898 the defendant tapped the pipe in the cellar of the mill with a three quarter inch pipe which he laid to his dwelling house, erected on land which was not a part of the mill property at the time it was conveyed to the defendant. Through this pipe the water is carried to the defendant's residence and is there used for domestic purposes. The part of the water taken to the house in the pipe and not consumed, is returned to the head race and with the water in the race is used in running the mill.

This is an action of trespass brought December 28, 1898, to recover damages from the defendant for illegally diverting water from Sand spring and using it for " culinary, domestic and irrigating purposes." The plaintiff alleges that under the deed to the defendant, the latter is restricted in the use of the water of the spring to running his gristmill and cannot use it for any other purpose. On the other hand it is contended by the defendant that under his grant of the use of the water, he can use it for any purpose connected with the working of the gristmill, and that that includes the use of it for domestic purposes at the private residence of the miller. It is claimed that such use of the water is consistent with the grant in the defendant's conveyance and that the diversion of the water for that purpose is not an infringement of the plaintiff's title to the spring.

The facts of the case are undisputed. The court below sustained the defendant's contention and directed a nonsuit. In the opinion refusing to take off the judgment of nonsuit the learned trial judge says : " There is vested in the defendant, by the grant, the exclusive right to the water, that is, all the water of Sand spring. The reservation and grant state that it is for the use of the gristmill, which at the time of the grant was, and still is on the premises now held by the defendant.

There is no question of the quantity of water granted. . . . Plaintiff can recover only if such reservation and grant are construed to mean that the water shall be used only for the gristmill. . . . The said diverson, on defendant's land, of a small portion of the water, is no injury to the plaintiff; the latter is in no worse plight than he would be if defendant used the whole for power purposes at the mill." The reasoning of the learned judge led him to the conclusion that the defendant has the right to use the water for domestic purposes, and that if he did not acquire that right under his conveyance, the quantity consumed by the defendant for the purpose was so small that it did the plaintiff no actionable injury.

It is conceded that the rights of the parties to the water of Sand spring depend upon the interpretation of the grant to the defendant and the reservation contained in the plaintiff's deed. No question of riparian rights arises in the case. The language of the grant and reservation is substantially the same, and in our judgment its construction is not attended with any difficulty. It is plain and unambiguous and the intention of the parties to the conveyance is manifest. It is therefore not necessary in aid of the interpretation of the deeds in question, to invoke the rule that the words of a grant are to be construed most strongly against the grantor. And it may be observed, as said by Mr. Justice TENNY in Deshon v. Porter, 38 Me. 294, that general rules of interpretation " have no influence in a question of the construction of a deed, where the intention of the parties is clearly expressed in the written agreement made by themselves." The defendant's deed did not convey the water generally, nor any specific quantity of it, nor " a sufficient quantity for mill purposes." The words of the grant cannot be so interpreted. The defendant acquired the sole and exclusive right to use the water of Sand spring for the specific object named in the grant, to wit: " for the use of said gristmill." The grantee is therefore limited in his use of the water to the purpose specifically set forth in his deed. Such must be the interpretation of the grant and reservation in the deeds to the plaintiff and defendant, unless we ignore the language as well as the manifest intention of the parties as disclosed by it. The language of Judge TENNY in delivering the opinion in the case above cited is applicable here, using

the words "the gristmill" for the word "tanning." He says "the object of the grant of the water power is as direct and simple as language could make it, without the use of restrictive words. There is nothing tending to show, that any other purpose was then entertained, or would be thought of afterwards. The deed contains no words indicative of an intention to give a general measure of the quantity of water power granted, such as 'so much as would be required,' etc., 'the quantity necessary,' or 'sufficient' for the purposes of" the gristmill.

Water "for the use of said gristmill" clearly and unequivocally means that the water shall be used as the power in operating the mill. Such is the common and well accepted meaning of the language employed in making the grant, and it is therefore our duty to so interpret it: Schuylkill Navigation Co. v. Moore, 2 Wh. 490; Case v. Cushman, 3 W. & S. 546. The intention of the common grantor as well as of the grantees in the deeds was that the water of the spring should be given the owner of the gristmill for the purpose of running or operating the mill. · It was not contemplated by either party to the grant that it should be used for domestic or any other purpose by the owner of the mill. The waters of the spring, in addition to a part of the water taken from Coplay creek, the parties supposed were necessary to run the mill. Hence the water of the spring was reserved from the grant of the land on which the spring appeared and was given to the owner of the mill for the purpose stated in the latter's deed. There is no other apparent reason or necessity for the grant of the water to the one, and the reservation of it from the other. So far as is disclosed by the facts of the case, the grantee of the mill premises did not need it for domestic uses at the time of the grant, and in fact it was not so used until the defendant diverted it for that purpose a short time prior to the bringing of this action and many years after the grant was obtained. This was practically a construction of the grant by the parties themselves adverse to the contention of the defendant. By explicit language contained in the grant, he has the right to take the water of the spring for a specific purpose and he is restricted in the use of the water to that purpose. We cannot by construction extend or enlarge the grant and defeat the clearly expressed intention of the parties.

We do not agree with the conclusion of the learned trial judge that the injury done to the plaintiff is so small that he is not entitled to recover in this action. The plaintiff seeks here only nominal damages and thereby to establish the rights of the parties to the water of this spring. If his interpretation of the grant and reservation is correct, he was entitled to a verdict. This would have confined the defendant in the future to the use of the water for running the gristmill. This was evidently the object of the action. While the quantity of the water thus far taken by the defendant for other than the purposes of the mill was small, yet it is apparent that he did not intend to so restrict himself in the future. The size of the pipe tapping the main or larger pipe and leading to defendant's residence indicates a different intention. If the defendant's contention be correct, he is not required to limit himself in the quantity of water taken for domestic purposes, but may consume the entire amount discharged by the spring. The question, therefore, presented for the learned judge's determination did not involve the quantity of water taken, but the right to take any part of it for any purpose other than the running of the gristmill.

We are of the opinion that while the defendant has the right under his grant to take the water of Sand spring and utilize it as a power for operating his gristmill, he cannot take all or any part of it for any other purpose. It therefore follows that the court below erred in refusing to take off the judgment of nonsuit.

The assignments of error are sustained. The judgment is reversed and a procedendo awarded.