## Eastern Pennsylvania Power Company, Appellant, *v.* Lehigh Coal and Navigation Company.

*Contracts — Equity — Canal companies — Power companies — Deeds—Grants of water rights—Construction—Intention—Bill for injunction—Demurrer.*

1. A grant of water power is not a grant of water for anything else than the propulsion of machinery; it is not a grant of property in the corpus of the water as a chattel.

2. The employment of the term, "horse power," in a lease conveying the right to draw water from a canal as the standard by which the water so drawn is to be measured, discloses the intention of the parties to the lease that the water shall be used solely for producing power, not for consumption.

3. A bill in equity filed by a power company to restrain a canal company from a threatened shutting off of a water supply furnished under a contract, is properly dismissed where it appears

that the parties, who had prior contractual relations in reference to such water supply, had entered into a new contract reciting that the plaintiff desired "to adopt a different method for computing the water rent to be paid annually so that the computation shall be based on the amount of horse power furnished rather than the number of square inches," which had previously been the basis of measurement, and granted to the plaintiff power company the right to use sufficient water from the canal to produce 1,500 horse power continuously, at a stipulated annual rental; that the plaintiff claimed the right to use part of the water so drawn for condensing, whereby the water was consumed and its flow back into the canal prevented; and that the defendant denied the right of the power company to use water for purposes other than the development of power and threatened to shut off the plaintiff power company's supply unless an additional compensation was paid for water used for condensing.

Argued March 31, 1914.  Appeal, No. 97, Jan. T., 1914, by plaintiff, from decree of C. P. No. 5, Philadelphia Co., March T., 1913, No. 5520 in Equity, sustaining demurrer and dismissing bill for an injunction in case of The Eastern Pennsylvania Power Company v. The Lehigh Coal and Navigation Company.  Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ.  Affirmed.

Bill in equity for an injunction.

From the record it appeared that the granting clause of the agreement between the Lehigh Coal and Navigation Company and the Eastern Power Company, plaintiff's predecessor in title, referred to in the opinion of the Supreme Court, was in part as follows:

"The said, The Lehigh Coal and Navigation Company for and in consideration of the rental hereinafter reserved......, has granted, bargained, sold, aliened, released and confirmed and by these presents does grant, etc........unto the said Eastern Power Company of Pennsylvania, its successors and assigns, the right, privilege and license to draw from time to time and at all times hereafter except as is hereinafter provided from the canal of the Lehigh Coal and Navigation Com-

pany adjoining the above described lots sufficient water to produce in the aggregate fifteen hundred (1,500) horse-power continuously at an annual rental of Eight Dollars and fifty cents ($8.50) per horse power, payable semi-annually on the first days of January and July in each and every year."

Other facts appear in the opinion of the Supreme Court.

The defendant demurred to the bill. The court sustained the demurrer and dismissed the bill. Plaintiff appealed.

*Error assigned* was the decree of the court.

*Joseph A. Slattery,* with him *Robert E. Steedle,* for appellant.—The grant of "sufficient water to produce in the aggregate fifteen hundred horse power continuously" is a limitation of the quantity of the water only, and not a restriction as to the use of the water: Tourtellot, et al., v. Phelps, 4 Gray (Mass.) 370; Garland v. Hodson, 46 Me. 511; Hartford Woolen Co. v. Bugbee, 76 Vt. 61; Coburn v. Middlesex Company, 142 Mass. 264; Philadelphia v. Spring Garden, 7 Pa. 348.

The grant of "sufficient water to produce in the aggregate fifteen hundred horse power continuously" defines the quantity of water granted, and not the amount of power or mechanical force: Union Water Power Co. v. Lewiston, 101 Maine 564.

That a construction should be given to a grant of water rights and privileges which is most advantageous to the grantee without being more onerous to the grantor: Carthage Tissue Paper Mills v. Carthage, 200 N. Y. 1; Fisk v. Wilber, 7 Barb. (N. Y.) 395; Ashley v. Pease, 18 Pick. (Mass.) 268; Johnston v. Hyde, 33 N. J. Eq. 632, 642; Walker v. Lillingston, 137 Cal. 401.

A most liberal construction of a grant of water rights and privileges should be made in favor of the grantee, on the ground of public policy.

*Henry S. Drinker, Jr.*, with him *Samuel Dickson*, for appellee, cited: Philadelphia v. Commissioners of Spring Garden, 7 Pa. 348; Woodring v. Hollenbach, 202 Pa. 65.

OPINION BY MR. JUSTICE STEWART, July 1, 1914:

A demurrer to the appellant's bill was sustained in the court below on the ground, that the written document from which plaintiff would derive the right for which it asks protection against defendant's threatened interference, does not confer the right claimed. The bill claimed for the plaintiff the right to use and employ the prescribed quantity of water it was entitled to derive from the defendant company's canal for other purpose than the direct generation of power, and rested this claim of right on a certain article of agreement in which plaintiff and defendant were the contracting parties, entered into 1st May, 1899. This agreement, after reciting that plaintiff had by good and sufficient deed acquired title to certain lots of ground adjacent to the defendant company's canal, which certain water rights appurtenant thereto, through other parties to whom the defendant company had previously conveyed the same, proceeds as follows:

"Whereas the Eastern Power Company, party of the second part hereto, by virtue of several conveyances heretofore made, has become the owner of the lots and water power granted by the before recited indentures;

"And Whereas, the Eastern Power Company desires to secure an amount of water power in addition to that granted as before recited;

"And Whereas, the said Eastern Power Company desires to adopt a different method for computing the water rent to be paid annually so that the computation shall be based on the amount of horse power furnished rather than on the number of square inches.......It is mutually agreed by and between the parties hereto that the water power hereby granted is subject to all the

agreements, conditions, limitations and restrictions which in these presents or in the prior grants made by the Lehigh Coal & Navigation Company, save only the mode of computing the water power by the horse power instead of by the square inches as hereinbefore recited."

While the several conveyances from the defendant company to the parties from whom the plaintiff derives its title accompany and are made part of the bill, it is not claimed that the water privilege appurtenant is there otherwise defined than in the agreement of 1st May, 1899, above in part recited; and in its submitted brief the appellant rests its present demand exclusively upon the agreement. The case turns on the construction of the latter instrument, the essential parts of which we have quoted above. No equities are asserted, and no other or greater right is claimed than can be properly derived from the terms of this contract. The appellant is a corporation engaged in the business of manufacturing and supplying heat, light and power by means of electricity; and is and has been using annually about 1,600,000,000 gallons, or the equivalent of eighty-eight hundredths horse power, and employing a certain amount of the water derived by it from the canal for condensing. The defendant company denies the plaintiff's right to employ the water for such purpose, inasmuch as it involves necessarily a consumption of the water to a greater or less degree, and prevents a return to the canal of part of the water drawn therefrom, and has demanded that plaintiff shall pay for the water so employed at the rate of $3.00 per million gallons, under threat that it will shut off the supply unless this demand be complied with. Confining the question within the narrow limits above indicated, the case is free from difficulty. What was granted was the privilege to draw from time to time and at all times thereafter from defendant's canal sufficient water to produce in the aggregate 1,500 horse power continuously, at an annual rental of eight and fifty one-hundredths ($8.50) dollars per

horse power, payable semi annually, on the first days of
January and July of each and every year. The employ-
ment of the term "horse power" as the standard by which
the water supply is to be measured indicates very clearly
what was in contemplation of the parties with respect to
the use to which the water drawn from the canal was to
be applied. By express stipulation in the contract, and
at the instance of the plaintiff, this standard of meas-
urement was adopted in preference to measurement by
square inches which had previously been observed be-
tween the defendant company and plaintiff's prede-
cessors. The change in standard does not in our mind
indicate any change in the use to be made of the water;
for when the measurement was made by square inches, it
was expressly provided that the amount supplied was to
be the equivalent of a certain horse power. If, however,
under the earlier standard there was room for question
as to whether plaintiffs would have the right to use the
water for any other purpose than developing power for
the driving of machinery, that room has been narrowed
very much by the later contract upon the strict letter of
which the plaintiff now rests its case. The term horse
power has in popular acceptation a fixed, definite mean-
ing. As originally employed it expressed the power of a
steam engine. It has come to mean the unit in estima-
ting the power required to drive machinery. Such use
does not consume the water; the volume of it remains
the same after as before, to be re-employed indefinitely
as occasion may demand by him who is the owner of the
supply. "A grant of water power" says GIBSON, C. J., in
Mayer v. Commissioners, Etc., 7 Pa. 348, "is not a grant
of the water for anything else than the propulsion of ma-
chinery.......It is not a grant of property in the corpus
of the water as a chattel." Admittedly in the present
case the plaintiff is using the water it derives from the
defendant's canal for other purposes than the propulsion
of machinery. The additional use averred in the bill is
for condensation purposes. The bill does not aver that

such added use will not reduce the quantity of water returned below the quantity received, or impair its quality.  In such circumstances, however it might be were the averments in the bill to such effect, it is enough to know that the added use does not fall within the letter of the grant, since it is obvious that it is not for the purpose of propelling the machinery:  Woodring v. Hollenbach, 202 Pa. 65.  Being a purpose other than that expressed in the contract, the court can not assume that its exercise would be without prejudice to defendant's rights, especially since it is matter of common knowledge that by the process of condensation more or less of the water employed is lost by evaporation.  The amount is immaterial in a controversy of this kind where the right of property in the thing itself is involved.  We are of opinion that plaintiff's bill does not disclose a case calling for equitable relief and that the court below properly sustained the demurrer thereto. The decree dismissing the bill is affirmed.