Stewart et al., Appellants, *v.* Monongahela Valley Country Club.

Argued November 15, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Paul N. Barna,* for appellants.

*Thomas L. Anderson,* for appellees.

OPINION BY ROSS, J., March 24, 1955:

Certain individuals filed a complaint in equity against the Monongahela Valley Country Club, a nonprofit corporation, its directors and officers. The individuals, described in the complaint as "members in good standing" of the club, requested the court to restrain the club, its directors or officers from "calling any meeting for the election of directors, amendments of by-laws or transacting business" unless plaintiffs and other persons "similarly situated and affected" were "given the right to vote and participate therein". Further, plaintiff sought an order directing the defendants to "call a meeting of all the members . . . for the election of directors, amendments of the by-laws and transaction of general business of the corporation".

The defendants filed preliminary objections in the nature of a demurrer, the court below entered a decree sustaining the preliminary objections and dismissing the complaint, and plaintiffs have appealed to this Court.

The Monongahela Valley Country Club is a nonprofit corporation formed prior to the enactment of the Nonprofit Corporation Law (Act of May 5, 1933, P. L. 289, 15 PS sec. 2851-1 et seq.). The club was incorporated by the Court of Common Pleas of Washington County on December 15, 1919. Its purpose, ac-

cording to the articles of incorporation, is "the maintenance of a club for social enjoyment by the acquiring and maintaining of a clubhouse and grounds for social gatherings and playing of athletic games and sports".

The by-laws of the corporation, as pleaded by the plaintiffs, provide for two classes of membership: "(a) Active Members—being persons who have been duly elected to membership and who own at least one share of the capital stock; and (b) Non-Resident Members—being persons who have been duly elected to membership residing not less than fifteen miles from the club house and which own at least one share of stock or pay an initiation fee in the sum of $50.00". The by-laws provide further, according to the complaint, that "only *active* members shall be entitled to hold office or *vote* at the meeting of the club, or have any right, title or interest in the property of the club". (Italics supplied.)

Plaintiffs admit they do not hold stock in the corporation and, thus, are not "active members" of the club as defined by the by-laws. They contend, however, that "the by-laws requiring ownership of stock as a condition precedent (to the right to vote and participate in management) have been waived by the corporation, the directors and the officers since about 1926". Further, plaintiffs contend, the "provisions in the by-laws, that only active members who own stock shall hold office or vote at the meetings of the club, are illegal and unreasonable".

If a waiver of the by-laws under consideration is to aid these plaintiffs and entitle them to the relief they seek, it must, in our opinion, primarily appear that persons similarly situated have been given the right to vote and participate in the management of the club.

The first inquiry is the status of plaintiffs in relation to the defendant corporation. The only allegation in the complaint bearing upon this issue is plaintiffs' assertion that they are "members in good standing of the Monongahela Valley Country Club, each of which was duly elected to membership without any qualifications or restrictions of their rights as members". It is to be recalled that plaintiffs seek by this suit to establish their right to vote and otherwise participate in the management of the club. The question, then, is whether persons who are simply "members in good standing . . . duly elected to membership without any qualifications or restrictions of their rights as members" have ever been permitted to enjoy the rights plaintiffs seek for themselves. Only in such case would there be evidence of a waiver of the particular by-law under attack, i.e., the by-law providing that "only active members shall be entitled to hold office or vote at the meeting of the club".

Plaintiffs allege in their complaint: ". . . since about 1926 the *directors* and *officers* of said club have waived the by-laws by electing to *active membership* persons who do not hold a share of stock in said corporation and they have not been required to own a share of stock or to pay an initiation fee. Such persons have been elected to full membership without any restrictions on their privileges or curtailment of the rights and benefits that appertain to membership, such as the right to vote at the meetings of the corporation and to participate in the management thereof". (Italics supplied.) Subsequent paragraphs of the complaint indicate, however, that these unnamed persons elected to active membership did not enjoy the privileges of active members simply because there was no express limitation placed upon their rights by the directors and officers of the club. It appears that the *stockholders*

.jealously reserved to themselves the privileges of voting and management whenever the issue arose. Plaintiffs allege that "the last meeting held by the said directors was on October 27, 1937, which was restricted to the stockholders for the purpose of amending the Articles of Incorporation". Plaintiffs further allege that the directors and officers "called a special meeting of the *stockholding members* for July 15, 1953, for the purpose of electing a Board of Directors"; that "about 75 members, a vast majority of whom were non-stockholding members" appeared at the meeting of July 15, 1953; and that "an agreement was reached publicly" whereby the election of officers by the board would be deferred until the annual meeting of October 20, 1953, at which time amendments to the by-laws prepared by a committee of stock holding and non-stockholding members would be submitted to the entire membership of the club and the entire membership would then elect a Board of Directors and officers. Thereafter, the complaint continues, "The said board then did call a meeting of the stockholding members for Tuesday, October 20, 1953, for the purpose of electing twelve directors and to take action on proposed amendments to by-laws. No notice of said meeting was given to non-stockholding members". What transpired at the meeting of October 20, 1953 does not appear in the complaint for the very good reason that the complaint was filed on October 13, 1953. Further, it is not disclosed why some or all of the non-stockholding members did not appear at the meeting of October 20, 1953 to assert their rights under the alleged agreement reached with the stockholding members on July 15, 1953. True, it is alleged that no notice of the October meeting was given to non-stockholding members but the date of the October meeting was fixed at the preceding July meeting and, in fact, it is alleged that

non-stockholding members actually served on a committee which "did prepare amendments to the by-laws, which amendments were presented to the board and approved by said board".

We find nothing in the complaint indicating that the stockholding members ever permitted non-stockholding members to exercise the rights which plaintiffs now seek. We agree with plaintiffs' averment in their complaint that the "Board is determined to restrict the management of said club to the few members who hold stock certificates and thus refuse to permit the majority of the members from exercising the rights of membership, that is, the right to participate in the management of the corporation and vote for the directors and officers of said corporation". If, as plaintiffs assert, this statement correctly reflects the attitude of the board and of the stockholding members, their position is consistent with the by-law and negatives the idea of waiver.

The plaintiffs state in their complaint: "18. Said Board of Directors and officers have violated or waived nine-tenths of the provisions of the by-laws by having classes of membership not provided for in the by-laws, by increasing the mileage for nonresident members, by waiving of initiation fees, by failure to hold annual meetings of the stockholders or of the members of the club, by failure to hold a meeting for the election of officers, by having one man act as secretary and treasurer, by operating with eleven directors instead of twelve, by failure to have the books of the corporation audited since 1940, by failure to give written reports to the membership of the financial status of the said corporation, by failure to comply with the by-laws concerning visitors, by collecting greater membership dues than provided by the by-laws, by failure to appoint a House Committee or a Grounds Committee as

provided by the by-laws and in other manner failing to comply with said by-laws." Significantly absent from this long list of alleged abuses is a statement that the by-laws limiting voting privileges to active members has ever been violated or waived. Further, we have read with care the rather lengthy brief filed by plaintiffs and despite the greater latitude which is characteristic of argument as distinguished from pleading, find no statement of fact indicating that the particular by-laws under consideration have been waived. So far as the complaint or brief is concerned, no person other than a stockholder has ever voted in this nonprofit corporation.

There remains the plaintiffs' contention that the by-laws under attack are illegal and unreasonable. This nonprofit corporation was formed before the enactment of the Nonprofit Corporation Law, 15 PS sec. 2851-1 et seq. Plaintiffs agree, however, that the Monongahela Valley Country Club is, as provided in section 3 of the Act, 15 PS sec. 2851-3, "subject to the provisions of this act without formal reorganization hereunder, and shall be deemed to exist under this act . . ."

Section 401 of the Act, as amended, 15 PS sec. 2851-401, provides that the "members of a nonprofit corporation shall have the power to make, alter, amend, and repeal the by-laws of a nonprofit corporation . . ." Section 601, 15 PS sec. 2851-601, provides, inter alia: "Membership in all nonprofit corporations shall be of such classes, and shall be governed by such rules of admission, retention, suspension and expulsion, as the articles or by-laws shall prescribe, except that all such rules shall be reasonable, germane to the purpose or purposes of the corporation, and equally enforced as to all members of the same class. *Unless otherwise provided by the articles or by-laws,* there shall be one class of members whose *voting* and other rights and

interests shall be equal . . ." (Italics supplied.) And section 304, as amended, 15 PS sec. 2851-304, provides in part: "A nonprofit corporation may be organized upon either a nonstock basis or upon a stock share basis, as set forth in its articles . . ."

In view of the several provisions of the Nonprofit Corporation Law, we are impelled to agree with the following excerpt from the opinion of the learned court below: "It can readily be seen that the bylaws of the country club do not conflict with the statutes. When the bylaws were passed, it was the apparent intent of the founders of this club to retain the control thereof in the hands of the *active members*. Manifestly the articles of the incorporation and the bylaws are specifically drawn to keep the control of the corporation in those members signing the articles of incorporation or admitted to membership who owned stock therein. The Non-Profit Corporation Law of Pennsylvania is designed to permit such members of the club to control the management, affairs and property of the club as these defendants have done and are doing in this case.

"The allegations of unreasonableness cannot be sustained. It is the general rule that a corporation may, subject to any provisions in the articles or statutes, adopt bylaws which regulate in a reasonable manner the right to vote and the manner or method of voting at the corporate elections. Commonwealth v. Detwiller, 131 Pa. 614, 18 Atl. 990 (1890). Corporations may prescribe through bylaws the qualifications necessary for membership and the procedure by which membership may be acquired. Diligent Fire Co. v. Commonwealth, 75 Pa. 291 (1874) ; Fletcher, Cyclopedia of the Law of Private Corporations, Penna. Ed. Vol. 8, sec. 4203 (1931). Before a bylaw may be declared invalid for unreasonableness, the fact that it is unreasonable must clearly appear, and the Court ordinarily will not

substitute its judgment for the judgment of those who were authorized to adopt the bylaws. Granara v. Italian Catholic Cemetery Ass'n., 218 Mass. 387, 105 N.E. 1073 (1914)."

We agree with the conclusion of the learned court below ". . . that the defendant corporation lawfully adopted a bylaw defining the rights and duties of active members; that this bylaw is legal and binding upon the plaintiffs and all those on whose behalf this action was brought; that by their voluntary acceptance of membership the plaintiffs accepted and assented to this bylaw; that the plaintiffs have not pleaded or shown a legal waiver of that bylaw by the defendant corporation."

Decree affirmed at the cost of appellants.