## McDonald v. Lake Hauto Club

*William E. McDonald,* for plaintiff.
*Robert Lazorchick,* for defendant.

LAVELLE, *Chancellor*, October 31, 1979— Plaintiff brought this suit in equity asking this court to issue an injunction ordering defendants to register plaintiff's motor boat and allow him to operate it on Lake Hauto and any other relief the court would deem appropriate. An evidentiary hearing was conducted on August 14, 1979. At the direction of the court, counsel submitted proposed findings of fact and conclusions of law supported by legal memoranda. Oral argument was heard in argument court on September 5, 1979 and the case is now ripe for disposition.

In essence, this case involves the interpretation of the following rule promulgated by the Lake Hauto Club, a Pennsylvania nonprofit corporation and its directors: "Power boats are restricted to a maximum length of 17 feet with a horsepower not to exceed 85 H.P." Plaintiff, a member of the club, contends that the term "horsepower" in the rule refers to the power of his boat or more specifically the power available to his boat under actual conditions on Lake Hauto.

Plaintiff also contends that defendants' acts and rules discriminate against him because:

(1) Defendants refuse to register his boat under the said rule even though the boat complies with the rule.

(2) Defendants continue to permit use of the lake by boats equivalent to that of plaintiff if those boats were on he lake prior to 1975.

(3) Defendants are arbitrary in their registration procedures because the registration procedures are not strictly followed in all cases and boats not on the lake prior to 1975 but which exceed rule specifications, are currently using the lake.

Upon careful scrutiny of the testimony, the rules of the club and briefs and arguments of counsel, we

conclude that the term "horsepower" as used in Lake Hauto Club's rule refers to the theoretical horsepower of a boat's engine that is, the horsepower of a boat's engine as it is rated by the engine's manufacturer.

Our holding is based upon the following

## FINDINGS OF FACT

(1) Plaintiff, William J. McDonald, is an individual, resident of Carbon County, and a member of the Lake Hauto Club.

(2) Defendant, Lake Hauto Club, is a Pennsylvania nonprofit corporation with its principal place of business at R.D. 1, Lake Hauto, Nesquehoning, Carbon County, Pa.

(3) The individual defendants constitute the Board of Directors of Lake Hauto Club.

(4) At all times relevant to this action, the Lake Hauto Club was and is the sole owner of Lake Hauto, its shoreline and the waters of the lake.

(5) The Lake Hauto Club Board of Directors have authority to create rules and regulations governing the use of the lake waters and shore by all watercraft.

(6) The rules in question promulgated by defendant and stipulated to by counsel read:

"Craft must be registered with the Club prior to launching on Lake Hauto annually and must display the Lake Hauto registration emblem . . . . "

"Power boats are restricted to a maximum length of 17 feet with a horsepower not to exceed 85 H.P. Power boats registered and operated on Lake Hauto prior to 1975 are excluded."

The latter rule was adopted in 1975 by the Board of Directors of Lake Hauto Club.

(7) In the Spring of 1977, plaintiff purchased a

boat whose engine was rated by the manufacturer at 120 horsepower.

(8) Plaintiff had personal knowledge of said rules.

(9) At all times relevant to this action plaintiff believed that the said boat complied with the said rules of Lake Hauto Club.

(10) In 1977, plaintiff registered the said boat on Lake Hauto as an 85 horsepower boat.

(11) In the Summer of 1977, plaintiff was requested by Lake Hauto Club to submit his boat to inspection and plaintiff fully complied with this request.

(12) On May 28, 1978, Lake Hauto Club denied registration to plaintiff's boat for the reason that the boat had an engine which was rated at 120 horsepower by the manufacturer and thereby exceeded the 85 horsepower limitation.

(13) Tests conducted on Lake Hauto by plaintiff's boat expert established that the actual power of plaintiff's boat is slightly below 85 horsepower.

(14) 26 boats with a horsepower exceeding 85 horsepower and six boats with a length exceeding 17 feet currently operate on Lake Hauto. All of these boats operated on Lake Hauto prior to 1975.

(15) In order to register a boat for use on Lake Hauto, defendants' registration form requires that boats with engines 85 horsepower or over must present a copy of their warranty identification card, and all boats must present a copy of their Pennsylvania registration form.

(16) The personnel charged with enforcement of the Lake Hauto Club rules, including all defendants, are not boat experts; they are lay persons.

## DISCUSSION

The meaning given the term "horsepower" by the

courts is the one generally accepted by popular usage: Eastern Pa. Power Co. v. Lehigh Coal & Navigation Co., 246 Pa. 72, 77, 92 A. 47, 48 (1914); Rozner v. Korshak, 55 Ill. 2d 430, 303 N.E. 2d 389, 392 (1973). Use of the term in classification schemes reflects a governing body's interest to have a uniform and equally enforceable regulation. For example, in automobile registration:

"[A] state may rightfully prescribe uniform regulations necessary for public safety and order . . . . And to this end it may require registration of such vehicles . . . charging therefor reasonable fees *graduated according to the horse-power of the engines,–a practical measure of size, speed, and difficulty of control.*" Hendrick v. Maryland, 235 U.S. 610, 622, 35 S. Ct. 140, 142, 59 L. Ed. 385, 391 (1915). (Emphasis added.)

Aside from the fact that use of engine horsepower is a practical classification readily understood by the public the terms "engine horsepower" and "vehicle or automobile horsepower" appear interchangeable. The courts make no distinction between them. See Kane v. New Jersey, 242 U.S. 160, 164-167, 37 S. Ct. 30, 61 L. Ed. 222, 226-227 (1916).

Where distinction is drawn, it is between actual and theoretical horsepower and it is based on specific delimiting language. The term "net horsepower" was held to mean the actually available horsepower. See Kimberly-Clark Co. v. Pattern Papper Co., 153 Wis. 69, 140 N.W. 1066, 1073 (1913).

The Court of Appeals of the Third Circuit has defined "net brake horsepower" as

"horsepower measured by a dynamometer at the engine coupling, without correction for power required by auxiliaries which may or may not be driven by the engine." Consolidated Fisheries Co. v.

Fairbanks, Morse & Co., 193 F. 2d 957, 959 (3rd Cir. 1952).

In other words, only available power is measured. Courts have recognized that the word "net" has the effect of limiting the measured horsepower of a machine or engine to that horsepower which is actually available.

We note that the word "net" does not appear in defendants' rule which limits the power of boats to 85 horsepower. We are not disposed to interpret the word "boat" as having the same limiting effect as the word "net" especially in a sentence where the word "boat" neither modifies nor stands adjacent to the term "horsepower".

In Eastern Pa. Power Co. v. Lehigh Coal & Navigation Co., 246 Pa. at 77, 92 A. at 48, "horsepower" was defined by the Supreme Court as follows:

"The term horsepower has in popular acceptation a fixed definite meaning. As originally employed it expressed the power of a steam engine. *It has come to mean the unit estimating the power needed to drive machinery.*" (Emphasis added.)

This definition explicitly refers to the power required to drive a given piece of machinery (theoretical power) rather than the amount of power left after the theoretical power is applied to that machinery (net horsepower or actual horsepower). In the instant case, the smallest engine that efficiently drives plaintiff's boat through the water, is one rated by its manufacturer at 120 horsepower. Thus, the estimated power to propel plaintiff's boat is 120 horsepower. According to the Supreme Court's definition, this estimated power which is also the manufacturer's rating of an engine, is the recognized figure associated with the term "horsepower." For this reason, plaintiff's boat, with an

engine rated at 120 horsepower, is in clear violation of Lake Hauto's horsepower limitation rule.

In this case, the court is not unmindful that the horsepower rule was promulgated by lay members who must interpret and enforce it. If "horsepower" as used in the rule should be interpreted as plaintiff contends, an extremely heavy burden would be placed on defendants to determine each and every boat's actual horsepower rating. Actual horsepower output is subject to such variables as the type of drive mechanism involved, the type of propeller used, hull design and load in the boat. An expert in power boats would have to be employed by defendants to test each and every boat before registration could be permitted. Under our interpretation of the rule, lay persons can simply look at the theoretical horsepower of the engine as it is stated by the engine's manufacturer.

Since this court interprets "horsepower" in Lake Hauto Club's rule to mean the theoretical horsepower of a boat's engine and not net horsepower or actual horsepower or "boat horsepower" as plaintiff contends, plaintif's evidence that the power of his boat on Lake Hauto is less than 85 horsepower is irrelevant.

Plaintiff further argues that defendants Lake Hauto Club and its directors are being arbitrary and discriminatory in allowing boats over 17 feet in length or with a horsepower exceeding 85 horsepower but registered on Lake Hauto prior to 1975, to continue using the lake while denying him the same privilege. Plaintiff also contends that defendants' procedure for registering boats on Lake Hauto discriminates against him.

Plaintiff's allegations of discrimination are without foundation in law or fact. Moreover, plaintiff's brief is bereft of any relevant authority to support

his feeble equal protection arguments. It is fundamental in constitutional law that before courts can consider discrimination as grounds for a remedy, the state must significantly involve itself with the discriminatory acts. In the present case, the necessary state action does not exist in the discriminatory actions of Lake Hauto Club which would permit this Court to interfere with Lake Hauto's rules or application of rules on equal protection grounds. See Moose Lodge No. 107 v. K. Leroy Ervis, 407, U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965 (1972); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449 (1974); Briscoe v. Bock, 540 F. 2d 392 (8th Cir. 1976).

Even if we assume that the required nexus exists between the challenged actions of Lake Hauto Club and the state, the interference of the court can only be minimal. This case does not involve a suspect classification nor does it involve fundamental rights. Therefore, the court will not interfere if the dual classification of motor boats by Lake Hauto Club into pre 1975 and post 1975 users of the lake bears a rational relationship to a legitimate club interest. See Williams v. Osser, 350 F. Supp. 646 (E.D. Pa. 1972); Singer v. Sheppard, 33 Pa. Commw. Ct. 276, 381 A. 2d 1007 (1978). Clearly, if Lake Hauto Club did not exempt pre 1975 boats from the rule placing limits on horsepower and size, this would have meant confiscation of many members' existing rights to use the lake and thus resulted in dissension within the club. One cannot discount the possibility that without the "grandfather clause" the rule limiting the use of the lake for water safety purposes may not have passed and a legitimate aim of the club would have been thwarted.

But aside from the constitutional issue raised by

defendants' claim of discrimination, it is a well established legal principle that courts should not substitute their judgment for that of the directors of a corporation and will not interfere with the internal management of a corporation unless the acts complained of consitute fraud, bad faith or gross mismanagement or are unlawful or ultra vires: 8A P.L.E. Corporation §322; Chambers v. Beaver-Advance Corp., 392 Pa. 481, 489, 140 A. 2d 808, 812 (1958); Bowman v. Gum, Inc., 327 Pa. 403, 409-410, 193 A. 217, 274 (1937); Gettemy v. Homestead Assoc. of Westmoreland, 29 W. 7, 11-12 (1946), aff'd. 356 Pa. 475, 52 A. 2d 325 (1947); Morris v. Somerset Co. Memorial Park, Inc. 21 Som 87, 93 (1962). Likewise, courts will not declare a by-law of a corporation invalid unless it is clearly unreasonable: Stewart v. Monangahela Valley Country Club, 177 Pa. Super. 632, 639-640, 112 A. 2d 444, 448 (1955).

It is neither unlawful discrimination against plaintiff nor is it arbitrariness, fraud, bad faith or gross mismanagement to permit boats with engines over 85 horsepower to continue using Lake Hauto if they were on it prior to 1975. This rule, for reasons already stated, furthers the club interest in water safety and harmony within the club. It is a sound and rational exercise of defendant's judgment as to what is best and fair for the Lake Hauto community and this court will not interfere with that judgment.

Plaintiff's argument that Lake Hauto Club discriminates against him in applying its boat registration system is not supported by sufficient evidence. "Denial of equal protection may be found in unequal application of a statute which is in itself valid." 7 P.L.E. Constitutional Law §202 (Supp. 1979). In common law, courts will interfere with

corporate actions if fraud, bad faith or gross mis-management are involved. But there was little if any proof at trial that the registration system was abused or that boats not on Lake Hauto prior to 1975 or with engines over 85 horsepower or with lengths over 17 feet were using the lake after 1975 with defendants' knowledge.

Based on the foregoing findings of fact and conclusions of law, we enter the following

## ORDER

And now, October 31, 1979, it is hereby ordered, adjudged and decreed that the injunctive relief and other relief prayed for by plaintiff in his complaint in equity be, and the same hereby is denied.